**Jo Ann Geurin PETTUS,**
**Appellant/Appellee,**

v.

**Sherrill Iverson PETTUS, Marc Alloju,**
**Russell Deck, Joey Harrison, Baldo**
**Navarez, Janice Roberts, Curtis W.**
**Martin, Charles E. Bearden, and**
**Richard T. Sink, Appellees/Appellants.**

No. 2–05–110–CV.

Court of Appeals of Texas,
Fort Worth.

Sept. 13, 2007.

Rehearing and Rehearing En Banc
Overruled Oct. 25, 2007.

Moses, Palmer & Howell, L.L.P., Shayne D. Moses, Gardner Aldrich, L.L.P.,

Robert E. Aldrich, Fort Worth, for Appellant/Appellee.

Stephens & Myers, L.L.P., Kerwin B. Stephens, Graham, Harris, Finley & Bogle, P.C., Russell R. Barton, Roland K. Johnson, and Shannon E. Goss, Fort Worth, for Appellees/Appellants.

PANEL B: LIVINGSTON, WALKER, and McCOY, JJ.

## OPINION

TERRIE LIVINGSTON, Justice.

### INTRODUCTION

This appeal involves the trial court's decisions regarding an arbitration that occurred within the context of a complex divorce. Appellant and cross-appellee, Jo Ann Geurin Pettus, appeals the part of the trial court's divorce decree allowing a pending arbitration proceeding to continue after entry of the decree and the trial court's subsequent judgment ordering Southern Bleacher Co., Inc.—a closely held corporation that the trial court awarded solely to Jo Ann—to pay arbitrators' fees and attorneys' fees to appellees and cross-appellants, Curtis W. Martin, Charles E. Bearden, and Richard T. Sink. Appellees and cross-appellants, Marc Alloju, Russell Deck, Joey Harrison, Baldo Navarez, Janice Roberts (all employees of Southern Bleacher), and Sherrill Iverson Pettus (Jo Ann's ex-husband), appeal from the part of the trial court's judgment vacating the arbitrators' decision. In addition, Martin, Bearden, and Sink (the arbitrators) appeal the rate of pre- and post-judgment interest awarded by the trial court on their award of arbitrators' and attorneys' fees. We reverse and remand the part of the judgment awarding pre- and post-judgment interest, but we affirm the remainder of the judgment.

## FACTUAL AND PROCEDURAL BACKGROUND

During their marriage, Jo Ann and Sherrill jointly owned Southern Bleacher as a closely held Texas corporation. After Sherrill filed for divorce, they became "deadlocked" in managing Southern Bleacher as well as two other related companies, Southern Bleacher Construction Company, Inc. and Southern Bleacher Mfg. I, L.L.C. Jo Ann asked the trial court to enter temporary orders appointing a receiver for the companies. Instead, the parties entered into an agreement on the record, pursuant to which the trial court entered "Agreed Additional Temporary Orders."

In the agreed temporary orders, the trial court outlined procedures for, among other things, reviewing bids made by the companies, the signing of payroll and other checks, the management of meetings, and the determination of compensation for employees of the companies. The agreement also provided for certain matters to be arbitrated if Jo Ann and Sherrill could not agree. For instance, one provision of the agreed temporary orders provided that "[a]ny bonus payments or salary increases for any employee or officer of [the companies] must be determined jointly by Sherrill ... and Jo Ann.... In the event there is a disagreement between the two of them, then this issue shall be subject to arbitration as hereinafter provided." The agreed temporary orders also provided that no employee was to be retaliated against

by reason of any of them appearing in Court, for any action that has taken place in the past concerning testimony or proposed testimony in this case, or touching upon the divorce of the parties, or for any involvement in what has been referred to by the parties in their testimony ... as 'corporate gamesmanship' and 'jockeying for position.'

Under the agreed temporary orders, Southern Bleacher was to compensate the arbitrators for their services in accordance with the agreement. The temporary orders also stated that they were to "remain in effect until a final decree of divorce is signed in this cause of action or further order of this Court."

The parties also had difficulty agreeing on matters related to arbitrations occurring under the agreed temporary orders. Accordingly, the trial court modified those orders by specifying how arbitration requests and proceedings were to occur. A couple of months later, after one of the parties had filed a motion to vacate an arbitration, the trial court signed an "Order Providing Procedures for Submission of Arbitration Disputes." In this order, the trial court confirmed the appointment by each party of an arbitrator and appointed a third arbitrator to complete an arbitration panel that would handle all future arbitrations. The order also specified procedures for arbitrations, scheduling of arbitrations, and compensation of the arbitrators. It also provided that in its deliberations and decisions, the arbitration panel would be guided by the best interest of the company concerned. The order further provided that "[a]ny disputes or issues concerning arbitrator compensation shall be referred to the Court for resolution" and that a decision "will be effective and binding when counterparts of the award have been signed by the three-person Arbitration Panel, or if a non-unanimous decision, by the two arbitrators agreeing to the decision, and delivered or faxed to each of the parties."

On March 25, 2004, the arbitrators issued a decision in a dispute that was referred to as "Impasse 8." In their decision, the arbitrators stated that "Sherrill

... *and Jo Ann* ... have requested a decision from the Arbitration Panel ... concerning the management of the business or the Companies" and that Sherrill had raised "issues concerning bonus payments, commissions and/or severance compensation for employees in the event of their termination arising out of a change in ownership or management [of the companies] in connection with the divorce proceedings." [Emphasis added.] The decision stated that if an employee of the companies was terminated before a change in ownership or management, then Jo Ann and Sherrill would agree on "an appropriate bonus, commission, and/or severance payment" for the employee, or if they could not agree, they would submit the matter for arbitration. It also directed that "immediately prior to any change in management or ownership, if [Jo Ann or Sherrill] believes that an employee is at risk of termination arising out of that change, then [the complaining party] shall identify such employee(s), and propose an appropriate bonus, commission, and/or severance payment for each such employee." Jo Ann and Sherrill were then to attempt to agree on the matter, but if they could not, the decision directed them to submit the matter for arbitration. At such an arbitration, the parties were to "offer each ... affected employee the opportunity to be a party to the arbitration concerning his/her compensation, provided that the employee agrees to be bound by (and limited to) the decision of the arbitration." The arbitrators later explained that in ruling on Impasse 8, they were concerned about the companies' ability to retain employees during the divorce proceedings and that a change in management *because of the divorce* could result in the termination of certain employees. Jo Ann has never challenged this decision. *See* TEX. CIV. PRAC. & REM.CODE ANN. § 171.088(a)(1), (b) (Vernon 2005) (providing that motion to vacate arbitration award must be filed within ninety days after delivery of a copy of the award to the applicant, or within ninety days after the grounds for the motion are known if those grounds are "corruption, fraud, or other undue means").

On February 23, 2005—after a jury trial on most of the divorce issues and a bench trial on the remaining issue, a licensing matter—the trial court issued a letter ruling granting the divorce, outlining the property division, and awarding Jo Ann both parties' community interest in the companies, for which she was to pay Sherrill $24,000,000 "as soon as possible but in no event later than 45 days from the date" of the signing of a decree. Although the letter contained the trial court's ruling on the divorce issues, it also stated that

> [t]his matter should be completed as soon as possible consistent with the rights of the parties. There is no doubt that I have overlooked something(s) [sic] and ask that you notify me of my omissions as soon as possible. Mr. Moses and/or Mr. Aldridge [sic] are directed to prepare a proposed Decree consistent with this ruling and submit it to other counsel of record for review.

On February 25, 2005, the trial court issued another letter stating that "[a]lthough not specifically stated in the letter ruling, there should be no question but that the Temporary Orders in this case will remain in effect until entry of a Decree. No party will engage in any actions that are contrary to those Temporary Orders." Thereafter, on February 28, 2005, Sherrill initiated Impasse 27 arising out of Impasse 8 and Sherrill's and Jo Ann's "opposing views on ... whether certain employees have been terminated or constructively terminated and the amount of payment (if any) that should be made to those employees as severance, commission and/or pro rata bonus." Neither party

adopted a suggestion made by the arbitrators in Impasse 8 to afford the affected employees the opportunity to be parties to the arbitration.[1] The trial court signed a "Final Decree of Divorce" on March 22, 2005. In it, the trial court dissolved the marriage and divided the parties' property, including a comprehensive listing of the items to be divided. In accordance with its February 23, 2005 letter ruling, it awarded Jo Ann the entire community interest in Southern Bleacher and the other companies in exchange for the payment of $24,000,000 cash to Sherrill. The decree also included the following provision regarding Impasse 27:

> The pending arbitration proceeding initiated by Sherrill . . . on February 28, 2005, identifying employees who are at risk of termination along with proposed bonuses and severance payments described in said motion shall continue before the existing arbitration panel established by the temporary orders in this proceeding until concluded and confirmed if judicial confirmation is required for any award. The temporary orders in respect to this arbitration proceeding shall survive entry of this judgment and remain binding upon both parties and the Southern Bleacher Companies which they concern.

The decree additionally provided that all other liabilities and obligations imposed by the agreed temporary orders were discharged, and it terminated the arbitration panel with the exception of pending arbitration matters. Further, the decree contained a Mother Hubbard clause denying all relief not expressly granted. Also on March 22, 2005, Jo Ann and Sherrill signed a Waiver of Appeal, in which they mutually agreed to waive any right to appeal the decree except as to matters relating to the arbitration of the impasse related to the "determination of severance pay" for employees of the companies.

On March 24, 2005, Jo Ann filed a notice of appeal from the decree "insofar as it relates to her right to contest the arbitration related to Impasse No. 26[sic] wherein Sherrill . . . seeks a determination of severance pay for certain employees" of the companies. That same day, she also filed an "Emergency Motion to Stay Arbitration" with this court requesting that an order be granted before March 29, 2005—the scheduled date for arbitration of Impasse 27—pending a determination of the appeal. In the motion, Jo Ann contended that the agreed temporary orders requiring disputes to be submitted to arbitration were intended to be effective only "until such time as the [trial] Court determined which party or parties should own" the companies and that the arbitrators had no authority to act after entry of the decree. We denied the motion on March 28, 2005.

The arbitration on Impasse 27 took place on March 29, 2005, and the arbitrators issued a decision on April 5, 2005. On April 18, 2005, Sherrill filed a motion to confirm the arbitrators' award in Impasse 27. He also filed a motion to modify the decree, or, alternatively, a motion for partial new trial, in which he asked the trial court to modify the decree to confirm the arbitration award in Impasse 27. In the alternative, he asked that a partial new trial be granted as to the arbitration proceedings "on the ground that the Court erred in prematurely entering a judgment that purports to be final but that does not dispose of all parties and issues in the case." Jo Ann responded by moving to vacate the arbitration award. The trial

---

1. The panel did, however, meet separately with Roberts, Harrison, Navarez, Deck, and Alloju, the affected employees.

court held a hearing on the motions on May 2, 2005.

On May 13, 2005, the trial court entered an order (1) vacating the arbitration award for failure to allow cross-examination and remanding the matter to the arbitration panel, (2) granting a new trial on the arbitration issues only, and (3) severing the arbitration issues into a separate cause number, thereby rendering the decree final. The trial court also ordered the parties to mediate the issues in Impasse 27, renamed Impasse 27A,[2] before any further arbitration proceedings.[3]

Attempts to mediate the matter failed, and the parties thereafter tried to schedule arbitration for June 2005. Because of scheduling conflicts, Jo Ann and her counsel requested "that the Panel continue a hearing until a date available for all concerned. It may be most efficient if the Panel will submit a July and August calendar and ask the parties to mark the dates they are unavailable." On July 12, 2005, however, Jo Ann's counsel sent the arbitrators a letter indicating that the agreed temporary orders pursuant to which the arbitration was to occur had expired with the decree becoming final and that the arbitrators no longer had authority to conduct an arbitration on Impasse 27A. The letter stated that "[b]ecause the Panel lacks authority to rule on any further issues, Southern Bleacher does not intend to compensate the arbitrators for the time that they serve in matters relating to or arising out of" Impasse 27A. In addition, the letter warned that Southern Bleacher no longer considered the indemnification

and immunity provisions of the trial court's prior "Order Providing Procedures for Submission of Arbitration Disputes" to be effective and that Southern Bleacher did not intend "to waive its rights to seek indemnity from the arbitrators for any damage they cause." The trial court was not copied with the letter.

On July 13, 2005, arbitrator Bearden sent a letter to Jo Ann's counsel acknowledging receipt of the letter and stating that "until I and/or the Arbitration Panel receives a signed order from [the trial court], or the matter is resolved on appeal, or other assurances are made to protect myself and the other Arbitrators from litigation, authority to act as Arbitrators, and full compensation paid for time served, I will not act or attend any arbitration proceedings." Thereafter, on July 18, 2005, employees Alloju, Frank Beaman[4], Deck, Harrison, Navarez, and Roberts filed a Plea in Intervention with the trial court, naming the companies as parties and asking that they be cited to appear.

On July 28, 2005, Jo Ann and Southern Bleacher filed a petition for writ of mandamus and emergency motion to stay arbitration with this court, asking the court to vacate the trial court's orders allowing the arbitration to continue past the signing of the final decree and to stay the arbitration while the matter was pending. Both this court and the Texas Supreme Court denied emergency and mandamus relief.[5]

On July 29, 2005, the trial court signed an order finding that Impasse 27A should "proceed to arbitration on or before Au-

2. For ease of discussion, all further references to this arbitration proceeding will be to Impasse 27A.

3. We abated this appeal pending the trial court's entry of a final judgment in the severed action.

4. Although Beaman was a party to the intervention, he is not a party to this appeal.

5. We denied both the motion for temporary emergency relief and the petition on August 1, 2005, and the Texas Supreme Court denied relief on October 14, 2005.

gust 12, 2005," that it would be conducted according to the procedures previously set in place by the trial court, that it would be "limited to the sole issue or issues as set forth in the prior arbitration decision," that "the provisions of such prior arbitration relating to procedure shall be strictly followed," and that "all costs for such arbitration are to be paid by Southern Bleacher Company."

Jo Ann, along with the companies, in response to the employees' plea in intervention, filed a "Motion to Strike Plea in Intervention and Original Answer Subject Thereto" on August 1, 2005. The companies did not enter a special appearance; instead, they joined in Jo Ann's motion to strike the intervention and, subject only to the motion to strike, joined in her answer to the intervention.

The arbitrators held a hearing on Impasse 27A on August 2 and 3, 2005. Before the hearing, the arbitrators suggested that the parties give the affected employees an opportunity to be parties to the arbitration proceedings. Jo Ann would not agree to this, and she also contended that the companies would not be bound by the arbitration. Although the arbitrators directed Jo Ann and Sherrill to resolve the matter of whether the employees would be parties to the arbitration before it took place, they did not. Jo Ann's counsel made it clear to the arbitrators that she did not wish to enter into any agreement that would bind her or the companies to · arbitrate with any employee.

When the issue arose again during the hearing, Jo Ann's counsel contended that in accordance with Impasse 8, Jo Ann and Sherrill were required to invite the employees to participate in the arbitration. The arbitrators

> therefore relieved counsel of any obligation that they had to invite the [e]mployees to participate in such a process,

because [the arbitrators'] purpose in the Impasse 8[r]uling was not to invite unilateral agreement to the Arbitration process, but to afford the Companies with an opportunity to have these matters fully and finally resolved through an agreement that would bind the parties to [the arbitrators'] ruling. As a result, no [e]mployee became a party to [the arbitration.]

The arbitrators issued a decision in Impasse 27A on August 24, 2005. The arbitrators found that during at least part of the divorce Beaman, Alloju, and Harrison were terminated "as a result of, or in connection with" the change in management of the companies; that Roberts, Deck, and Navarez were constructively terminated as the result of, or in connection with, the management change; and that some of the terminations or constructive terminations involved retaliation, corporate gamesmanship, or both. Accordingly, the arbitrators ordered the companies to make payments totaling $438,500 to the employees ˙in differing amounts.

Jo Ann filed a motion to vacate the award, continuing to assert that the arbitrators exceeded their authority in issuing a decision on Impasse 27A because the agreed temporary orders had expired. She later amended her motion to additionally assert that the arbitrators exceeded their authority by failing to follow the procedures in place for conducting the arbitration because the affected employees were never made parties to the arbitration agreement and that there was evident partiality by the arbitrators. Sherrill and the employees filed a motion to confirm the award.

In October 2005, the arbitrators sent a letter to Jo Ann and Southern Bleacher demanding payment for the Impasse 27A arbitration. On October 10, 2005, they

received a letter from Jo Ann's counsel stating that Jo Ann had no intention of paying the fees. Thereafter, the arbitrators filed a plea in intervention against Jo Ann and Southern Bleacher, seeking recovery of compensation for their services as arbitrators for Impasse 27A based on breach of contract and quantum meruit. They also requested attorneys' fees under chapter 38 of the civil practice and remedies code. TEX. CIV. PRAC. & REM.CODE ANN. § 38.001(8) (Vernon 1997). Jo Ann, without the joinder of the companies, filed a motion to strike the arbitrators' plea on November 16, 2005.

On April 18 and 19, 2006, the trial court held a hearing on the arbitrators' plea in intervention, Sherrill's motion to confirm, and Jo Ann's motion to vacate the award. Counsel for the arbitrators filed an affidavit with the trial court setting forth the amount of reasonable and necessary attorneys' fees incurred by the arbitrators in connection with their plea in intervention and the reasonable and necessary fees that they would incur in connection with an appeal.

On September 6, 2006, the trial court sent a letter to counsel for the parties in which it summarized the history of Impasse 27A and concluded that the arbitrators did not follow the court's July 29, 2005 order. However, it did conclude that the arbitrators were acting in good faith; therefore, it confirmed its prior ruling awarding the arbitrators actual damages and attorneys' fees with pre- and post-judgment interest. The trial court then asked for the parties' input regarding a suitable disposition of the matter. Following are pertinent excerpts from the letter:

The court has little doubt that the affected employees were placed into an untenable situation. It became clear during the course of the trial and post trial proceedings that there was an un-mistakable course of retribution directed to a number of employees. This is unfortunate and seems to be the underlying reason for submission of this matter to arbitration. *By Agreement and Court Order, both Mr. Pettus and Mrs. Pettus were bound by the Arbitrators' decisions. Neither asked the court to confirm or set aside the Arbitration Decision on Impasse 8. That ruling was in effect at the time the Divorce Decree was presented to the court and was specifically severed out by the court for final determination.* The court specifically ordered that the Arbitration would occur on or before August 12, 2005 and that it would be conducted in accordance with the procedures previously set by the court. Additionally, the court ordered that the provisions of the prior arbitration proceeding would be strictly followed. In conducting this proceeding, the arbitrators were following specific orders of this court. To now argue that the Arbitration Panel was without authority to conduct this proceeding is not convincing and is not well taken by the court.

The argument that no impasse existed is likewise not convincing. *Clearly, the matter was raised by Mr. Pettus prior to the Decree of Divorce being signed and there was no agreement between Mr. and Mrs. Pettus to pay bonuses, commissions, and/or severance pay.* This is the very meaning of "impasse". The court severed this matter from the divorce and assigned a separate cause number to it. The impasse existed and the arbitrators had authority to hear it.

There is no argument from the court about Mr. Pettus' taking advantage of the Arbitration Process. However, as previously noted, this process arose as a result of an agreement between Mr. and Mrs. Pettus which was set forth in the

*Agreed Temporary Orders* of November 21, 2003. Mr. Pettus did nothing more than utilize the procedure created by the parties. . . . *Both parties knew from the decision in Impasse 8 that the matter of severance could arise and neither sought to address it at trial.*

The real issues in this matter are whether the arbitrators strictly followed the "provisions of such prior arbitration relating to procedure" and whether they conducted the arbitration in "accordance with the procedures previously set by this Court."

[Underlined emphasis added.]

The trial court issued a final judgment[6] in the severed action on October 20, 2006. It granted Jo Ann's amended motion to vacate the arbitration award and the arbitrators' plea in intervention;[7] it denied all other motions. Thus, the trial court vacated the award in Impasse 27A in its entirety. It also ordered Southern Bleacher to compensate (1) arbitrator Martin $17,520.45, (2) arbitrator Bearden $14,842.50, and (3) arbitrator Sink $17,550.00, with pre-judgment interest of 7.75% on all amounts from November 4, 2005 through the date of judgment. The trial court further ordered Southern Bleacher to pay the arbitrators' reasonable and necessary attorneys' fees of $32,250.00 through trial and conditional appellate fees in the event of an appeal. All money awards were to accrue post-judgment interest of 7.75%.

After the trial court entered its final judgment, the arbitrators filed a motion to modify, stating that the correct rate of post-judgment interest was 8.25% as noted by the trial court in its September 6, 2006 letter. The trial court did not rule on this motion. Sherrill and the employees filed a notice of appeal from the trial court's decision indicating their intention to appeal the trial court's granting of Jo Ann's motion to vacate, and denial of Sherrill and the employees' motion to confirm, the arbitrators' award in Impasse 27A. Jo Ann filed a notice of appeal challenging the trial court's award of arbitrators' and attorneys' fees to the arbitrators, and the arbitrators filed a notice of appeal from the trial court's grant of 7.75% pre- and post-judgment interest. Southern Bleacher did not file a notice of appeal. Because Jo Ann had filed the original notice of appeal challenging the trial court's decision to continue the arbitration of Impasse 27A set forth in the decree, we designated her as the appellant and cross-appellee and the remaining parties as appellees and cross-appellants.

## ISSUES AND CROSS–ISSUES PRESENTED

In three issues, Jo Ann contends that the trial court erred by allowing the arbitration of Impasse 27A to continue after entry of the divorce decree, by allowing the arbitrators to intervene in the severed cause of action, and by ordering Southern Bleacher to pay the arbitrators' fees and attorneys' fees. In three cross-issues, Sherrill and the employees contend that the trial court erred by vacating and refusing to confirm the arbitrators' decision based on three grounds asserted by Jo Ann in her motion to vacate. And, also in

---

**6.** The judgment stated that "all relief not granted ... is denied" and that the "judgment shall be considered the final judgment in this cause."

**7.** The judgment references only the "Plea in Intervention" without identifying whether it was filed by the arbitrators or the employees. However, because the judgment awards the relief requested by the arbitrators rather than the employees, we presume that the "Plea in Intervention" refers to the arbitrators' plea.

a single cross-issue, the arbitrators challenge the pre- and post-judgment interest rate ordered by the trial court on the amounts awarded them for their services and for their attorneys' fees. We will address the issues related to the propriety of the arbitration (Jo Ann's first issue) and the trial court's order vacating the arbitration (Sherrill and the employee's cross-issues) first, and then address the issues related to the arbitrators and the amounts the trial court awarded them (Jo Ann's second and third issues and the arbitrators' cross-issue).

## ISSUES RELATED TO PROPRIETY OF ARBITRATION AND TRIAL COURT'S ORDER VACATING THE ARBITRATION AWARD

**Extension of Agreed Temporary Orders**

Jo Ann argues that the trial court abused its discretion by allowing the arbitration of Impasse 27A to continue after entry of the divorce decree. She contends that the agreement memorialized in the agreed temporary orders was meant to be effective only until the trial court determined which party would own the companies and, thus, that it terminated upon entry of the decree.

■ The agreed temporary orders stated that they would "remain in effect until a final decree of divorce is signed in this cause of action *or* further order of th[e] court." [Emphasis added.] There is nothing in the record to indicate that any party objected to this language. Typically, temporary orders expire with the entry of a final judgment and cannot function as a final disposition on an issue. *Coke v. Coke,* 802 S.W.2d 270, 273 (Tex.App.-Dallas 1990, writ denied). However, a trial court may extend a temporary order in its final decree. *See In re Lozano,* No. 01–06–00655–CV, — S.W.3D —, —, 2006 WL

2640634, at *3 (Tex.App.-Houston [1st Dist.] Sept. 14, 2006, orig. proceeding); *Coke,* 802 S.W.2d at 273; *see also Mathis v. Mathis,* No. 04–95–00386–CV, 1996 WL 668849, at *3 (Tex.App.-San Antonio Nov.20, 1996, no writ) (not designated for publication) (holding that trial court had discretion to continue temporary orders, which stated that they would "continue in full force until the signing of the final decree or until further order" of the court, after entry of decree). Although a temporary order may not supersede a judgment once the temporary order has expired, a trial court may enter temporary orders independently of the final decree. *Coke,* 802 S.W.2d at 273; *see also* Tex Fam.Code Ann. § 6.502 (Vernon 2006). Additionally, the rendition of a divorce decree does not itself nullify any temporary order. *See Ex parte Shaver,* 597 S.W.2d 498, 500 (Tex. Civ.App.-Dallas 1980, orig. proceeding); *Villarreal v. Villarreal,* No. 14–04–00071–CV, 2005 WL 3116218, at *4 (Tex.App.-Houston [14th Dist.] Nov. 23, 2005, no pet.) (mem.op.). For example, a temporary order setting child support is superseded as to future child support obligations by a final divorce decree, but the obligation, as fixed by the temporary order, continues unless specifically modified by the provisions of the divorce decree. *Shaver,* 597 S.W.2d at 500; *Villarreal,* 2005 WL 3116218, at *4.

Here, the trial court included language in the final decree specifically discharging Jo Ann and Sherrill from any obligations under the temporary orders except the obligation to arbitrate Impasse 27A. Thus, that past obligation was not extinguished by entry of the decree, and we must examine whether the agreement set forth in the agreed temporary orders encompasses the subject matter of the impasse. *See In re Oakwood Mobile Homes, Inc.,* 987 S.W.2d 571, 573 (Tex.1999) (orig.proceeding), *abrogated in part on other grounds by In re*

*Halliburton Co.*, 80 S.W.3d 566, 571–72 (Tex.2002) (orig.proceeding) (holding that trial court must compel arbitration after a party establishes that an arbitration agreement exists and that the claims raised in the suit fall within the scope of that agreement), *cert. denied*, 537 U.S. 1112, 123 S.Ct. 901, 154 L.Ed.2d 785 (2003); *Tex. Cityview Care Ctr., L.P. v. Fryer*, 227 S.W.3d 345, 350–51 (Tex.App.-Fort Worth 2007, pet. filed); *Jabri v. Qaddura*, 108 S.W.3d 404, 410 (Tex.App.-Fort Worth 2003, no pet.).

■■■ Federal and state law strongly favor arbitration. *Cantella & Co. v. Goodwin*, 924 S.W.2d 943, 944 (Tex.1996); *Jack B. Anglin Co. v. Tipps*, 842 S.W.2d 266, 268 (Tex.1992) (orig.proceeding); *In re Spiritas Ranch Enters., L.L.P.*, 218 S.W.3d 887, 901 (Tex.App.-Fort Worth 2007, orig. proceeding). We resolve doubts as to the scope of an arbitration agreement in favor of finding coverage. *In re Bank One, N.A.*, 216 S.W.3d 825, 826 (Tex.2007) (orig.proceeding); *In re D. Wilson Constr. Co.*, 196 S.W.3d 774, 782–83 (Tex.2006) (orig.proceeding).

Both parties agree that the agreed additional temporary orders contained a valid agreement to arbitrate any disputes relating to any type of management decision affecting the companies. However, Jo Ann argues that the arbitrators were "authorized to act [only] while Jo Ann and Sherrill awaited the determination of who would be awarded the" companies and that Jo Ann "never agreed to be bound by the arbitration process once the divorce was finalized." According to Jo Ann, there was no need for the temporary orders to remain in effect after entry of the decree because Sherrill no longer owned any part of the companies and, thus, no longer had any stake in how they were managed.

However, the parties never disputed the language in the agreed temporary orders stating that they would be effective until either the final decree was signed *or* a further order of the trial court. And construing the agreement in the agreed temporary orders in favor of arbitration, as we must, it is clear that it was meant to apply to disputes *arising* before a change in management of the companies as opposed to disputes *completed* before such a change. The trial court's February 23, 2005 letter indicating that it was awarding the companies to Jo Ann was clearly interlocutory. *See Goff v. Tuchscherer*, 627 S.W.2d 397, 398–99 (Tex.1982) ("Letters to counsel are not the kind of documents that constitute a judgment, decision or order from which an appeal may be taken."); *Gregory v. Foster*, 35 S.W.3d 255, 257 (Tex.App.-Texarkana 2000, no pet.) ("A letter is not a rendition of judgment if it only indicates the court's intention to render a judgment in a certain way and sets out guidelines by which counsel are to draw a judgment."). Thus, it was not until the decree was actually signed that the change in ownership and management of the companies occurred.[8] Sherrill instituted Impasse 27A before the entry of the final decree in reliance on the arbitrators' binding and unchallenged decision in Impasse 8. Jo Ann's contention that there was no need to complete the arbitration after entry of the decree is contrary to the trial court's and the arbitrators' concern about employees who might have been adversely affected by the change in ownership and the need for a mechanism to address potential compensation for those

---

8. Although the decree made the change in ownership retroactive as of December 31, 2004, nothing in the record shows that the parties would have been aware of the court's intention to make the effective date retroactive before entry of the final decree.

employees as a result of that change.[9] Accordingly, we conclude that the parties' arbitration agreement as set forth in the agreed temporary orders encompasses the dispute in Impasse 27A and that the trial court properly allowed the arbitration, which was initiated before the decree was entered, to continue after entry of, and independently from, the decree. We overrule Jo Ann's first issue.

### Whether Trial Court Abused Its Discretion By Vacating, Rather Than Confirming, Arbitration Award

In their cross-issues, Sherrill and the employees claim that the trial court erred by vacating the arbitration award in Impasse 27A and that it should have instead confirmed the award in favor of the employees.[10] Jo Ann argued, and the trial court agreed, that the arbitrators exceeded their powers by failing to abide by the prior procedures set forth in Impasse 8 regarding making the affected employees parties to any subsequent related arbitration, which the trial court had specifically ordered the arbitrators to follow in its July 29 order.

 We review a trial court's vacation, modification, or confirmation of an arbitration award de novo. *Hisaw & Assocs. Gen. Contractors, Inc. v. Cornerstone Concrete Sys., Inc.*, 115 S.W.3d 16, 18 (Tex.App.-Fort Worth 2003, pet. denied); *Tanox, Inc. v. Akin, Gump, Strauss, Hauer & Feld, L.L.P.*, 105 S.W.3d 244, 250 (Tex.App.-Houston [14th Dist.] 2003, pet. denied) (op. on reh'g). In Texas, review of arbitration awards is extraordinarily narrow. *Pheng Invs., Inc. v. Rodriquez*, 196 S.W.3d 322, 328 (Tex.App.-Fort Worth 2006, no pet.) (op. on reh'g); *Hisaw & Assocs.*, 115 S.W.3d at 18. Accordingly, courts indulge every reasonable presumption in favor of upholding an award. *Kosty v. S. Shore Harbour Cmty. Ass'n*, 226 S.W.3d 459, 462–464 (Tex.App.-Houston [1st Dist.] 2006, pet. denied); *Pheng Invs.*, 196 S.W.3d at 328; *IPCO–G. & C. Joint Venture v. A.B. Chance Co.*, 65 S.W.3d 252, 255–56 (Tex.App.-Houston [1st Dist.] 2001, pet. denied). Every reasonable presumption must be indulged to uphold the arbitrator's decision, and none is indulged against it. *Kosty*, 226 S.W.3d at 462–464; *IPCO–G. & C. Joint Venture*, 65 S.W.3d at 255–56.

 In the absence of a statutory or common law ground to vacate or to modify an arbitration award, a reviewing court lacks jurisdiction to review other complaints, including the sufficiency of the evidence to support the award. *Kosty*, 226 S.W.3d at 462–464; *Pheng Invs.*, 196 S.W.3d at 328–29; *IPCO–G. & C. Joint Venture*, 65 S.W.3d at 255–56. By statute, a trial court may vacate an arbitration award if the arbitrators have exceeded

---

9. We also note that the subject of the arbitration involved claims the employees and former employees would have asserted against the companies instead of Sherrill and Jo Ann individually. Thus, these are in the nature of contingent, unliquidated claims that would naturally follow the companies rather than the individuals, *cf. Cross v. Old Republic Sur. Co.*, 983 S.W.2d 771, 775 (Tex.App.-San Antonio 1998, pet. denied), and their existence would have been taken into account by the trial court in the valuation of the companies and the ultimate property division. To that extent, then, such claims are similar to any litigation pending against a company when a change in ownership occurs by sale or merger.

10. In their three cross-issues, Sherrill and the employees contend that the trial court erred by vacating the award on the following grounds: that the arbitrators exceeded their authority, that the employees and the companies were not made parties to the arbitration, and that the award was obtained by undue means and evident partiality. We address the authority ground first.

their powers. TEX. CIV. PRAC. & REM.CODE ANN. § 171.088(a)(3)-(4); *Pheng Invs.*, 196 S.W.3d at 329. The supreme court has stated that the "authority of arbitrators is derived from the arbitration agreement and is limited to a decision of the matters submitted therein either expressly or by necessary implication." *Gulf Oil Corp. v. Guidry*, 160 Tex. 139, 327 S.W.2d 406, 408 (1959); *Pheng*, 196 S.W.3d at 329. Arbitrators therefore exceed their powers when they decide matters not properly before them. *Pheng Invs.*, 196 S.W.3d at 329; *Barsness v. Scott*, 126 S.W.3d 232, 241 (Tex.App.-San Antonio 2003, pet. denied).

▪▪▪ In its July 29, 2005 order, the trial court required the Impasse 27A arbitration to be conducted in accordance with the procedures set forth in the prior arbitration decision of April 5, 2005. In that decision, the arbitrators stated that they "suggested to the Parties in the Impasse 8 ruling that the Parties afford these employees the opportunity to be a party to the arbitration. We suggested this again to the Parties ... before this hearing. Neither Party adopted and/or acted on this suggestion." [11]

In its September 6, 2006 letter, the trial court stated that

it is clear that the Arbitrators were placed between the proverbial rock and a hard place. They chose to go forward without requiring that the affected employees be "invited" to be [parties] to the arbitration and without the employees specifically agreeing to be bound by, and limited to, the decision of arbitration. The Parties, through their respective counsel, were relieved of the duty to "invite" the employees to participate. It cannot be argued that the procedures

were strictly followed. They were not. It is not disputed that the employees did in fact participate in the arbitration proceeding. It is also undisputed that the employees never made an overt declaration to be bound until after the fact, when they hired counsel and intervened in the proceeding. The issue becomes whether the fact that the arbitrators failed to strictly follow the procedures, as required, is excused by the employees' participation in the arbitration process without ever agreeing to be bound by, and limited to, the decision and whether the employees are nevertheless bound by the decision and therefore entitled to confirmation and enforcement of that decision.

The arbitrators should have strictly followed the procedures set forth in the decision in regards [sic] to Impasse No. 8. If either, or both, of the Parties failed to comply, the proceeding could have been recessed and the matter submitted to the court. The court could have directed and ordered the Parties to comply with the directive of the arbitrators and enforced that order by contempt. By not first directing the Parties to comply, the arbitrators did not follow the orders of the court set forth in its July 29, 2005 Order.

The parties never challenged the arbitrators' decision in Impasse 8; therefore, it was binding upon them by the terms of their agreement as set forth in the agreed temporary orders. And it required the parties to invite the employees to participate in that arbitration; they did not. Even construing the parties' agreement and the trial court's orders enforcing it in favor of the arbitration proceedings in Im-

---

11. Although the April 5, 2005 decision characterizes the language in Impasse 8 as a "suggestion," we note that the Impasse 8 decision

"directs" the parties to invite the employees to participate as parties.

passe 27A, it is clear that the arbitrators failed to follow their own procedure set forth in Impasse 8 and ordered by the trial court. Therefore, we hold that the trial court did not err by determining that the arbitrators exceeded their powers and by thus vacating the arbitration agreement. *See* TEX. CIV. PRAC. & REM.CODE ANN. § 171.088(a)(3); *Pheng Invs.*, 196 S.W.3d at 329. We overrule Sherrill and the employees' first cross-issue.[12]

## ISSUES RELATED TO AWARD OF FEES TO ARBITRATORS

### Arbitrator's Intervention in the Severed Action

Jo Ann contends in her third issue that the trial court abused its discretion by granting the arbitrators' plea in intervention. She argues that the arbitrators had an inaccurate basis for their plea, that their claim was not sufficiently related to the matter, and that their claims only served to further complicate the issues.

■■■■ Intervention is governed by Texas Rule of Civil Procedure 60, which provides that "[a]ny party may intervene by filing a pleading, subject to being stricken by the court for sufficient cause on the motion of any party." TEX.R. CIV. P. 60; *In re Lumbermens Mut. Cas. Co.*, 184 S.W.3d 718, 722 n. 5 (Tex.2006) (orig.proceeding); *Antonov v. Walters*, 168 S.W.3d 901, 907 (Tex.App.-Fort Worth 2005, pet. denied). Courts have considerable discretion in determining whether a petition in intervention should be struck. *Lumbermens*, 184 S.W.3d at 722; *Guar. Fed. Sav. Bank v. Horseshoe Operating Co.*, 793 S.W.2d 652, 657 (Tex.1990); *Anto-*

*nov*, 168 S.W.3d at 907. A trial court abuses its discretion by striking a plea in intervention if (1) the intervenor could have brought the same action, or any part thereof, in its own name, (2) the intervention will not complicate the case by an excessive multiplication of the issues, and (3) the intervention is almost essential to protect the intervenor's interest. *Guar. Fed. Sav. Bank*, 793 S.W.2d at 657; *Law Offices of Windle Turley, P.C. v. Ghiasinejad*, 109 S.W.3d 68, 70 (Tex.App.-Fort Worth 2003, no pet.).

■■■ A party has a justiciable interest in a lawsuit, and thus has a right to intervene, when its interests will be affected by the litigation. *Law Offices of Windle Turley*, 109 S.W.3d at 70; *Intermarque Auto. Prods., Inc. v. Feldman*, 21 S.W.3d 544, 549 (Tex.App.-Texarkana 2000, no pet.). However, the interest must be more than a mere contingent or remote interest. *Law Offices of Windle Turley*, 109 S.W.3d at 70; *Intermarque Auto. Prods., Inc.*, 21 S.W.3d at 549.

■■■ The arbitrators intervened because Jo Ann and Southern Bleacher refused to pay their fees for providing arbitration services for Impasse 27A in accordance with the agreement memorialized in the agreed temporary orders. The legislature has stated that a judgment creditor may move for the trial court's assistance in the same proceeding in which the judgment is rendered or in an independent proceeding. TEX CIV. PRAC. & REM.CODE ANN. § 31.002(d) (Vernon Supp.2006); *see Main Place Custom Homes, Inc. v. Honaker*, 192 S.W.3d 604, 627 (Tex.App.-Fort Worth 2006, pet. denied).[13] Additionally, the

12. Because we hold that the trial court's judgment is proper on the first ground, we need not address Sherrill and the employees' other two cross-issues. *See* TEX.R.APP. P. 47.1; *Teague v. City of Jacksboro*, 190 S.W.3d 813,

821 n. 7 (Tex.App.-Fort Worth 2006, pet. denied).

13. *Cf. Law Offices of Windle Turley*, 109 S.W.3d at 71 (quoting *Serna v. Webster*, 908

court-ordered arbitration procedures in this case stated that "[a]ny disputes or issues concerning arbitrator compensation shall be referred to the court for resolution." Therefore, the arbitrators would clearly have been able to bring the same action in their own names, either in the same proceeding or independently.

Jo Ann argued that the arbitrators complicated the issues of the severed action because their claims were not sufficiently related to the matter, which at its core was a divorce suit. We disagree. While the original proceedings primarily concerned the divorce, the severed action applied only to the arbitration of Impasse 27A. And Southern Bleacher's reason for refusing to pay the arbitrators is essentially the same as Jo Ann's main challenge to the arbitration proceedings themselves (in the trial court and on appeal): that the arbitration agreement set forth in the agreed temporary orders expired upon entry of the final decree. Thus, the arbitrators' claim for payment of services rendered during those arbitration proceedings is sufficiently related to the issues in the severed action, and allowing the intervention would not inject new issues into the case that were completely unrelated to the principal issue in the severed action. *See City of Missouri City v. State ex rel. City of Alvin,* 123 S.W.3d 606, 617 (Tex.App.-Houston [14th Dist.] 2003, pet. denied) ("Because Alvin's issues were identical to those in the quo warranto action, the intervention did not complicate the case by an excessive multiplication of issues."). Indeed, the plea would not have been necessary but for Jo Ann and Southern Bleacher's refusal to pay the arbitrators' fees in

accordance with the agreed temporary orders. Accordingly, we conclude that the intervention did not serve to further complicate the proceedings.

Furthermore, the arbitrators had no complaint with the merits of the judgment, they merely sought to protect their own interests. Intervention is allowed under such circumstances. *Cf. Lerma,* 166 S.W.3d at 893 (holding that trial court properly allowed attorney to intervene in suit post-judgment to recover unpaid fees) (citing *Breazeale v. Casteel,* 4 S.W.3d 434, 436 (Tex.App.-Austin 1999, pet. denied)). We find no reason to hold that the decision of the trial court in granting the plea in intervention so that the arbitrators could protect their own interests was an abuse of discretion. We overrule Jo Ann's third issue.

## Arbitrators' Fees and Attorneys' Fees

In her second issue, Jo Ann contends that if the part of the decree ordering continued arbitration of Impasse 27A was proper, then the trial court erred by awarding the arbitrators' fees and attorneys' fees in connection with their plea in intervention. However, Jo Ann was not ordered to pay these fees personally; instead, the trial court ordered Southern Bleacher to pay those fees. Southern Bleacher did not file a notice of appeal, and Jo Ann did not indicate in her notice of appeal that she was filing it as a representative of Southern Bleacher or on its behalf.

An appellate court may not grant a party who fails to file a notice of appeal more favorable relief than did the

S.W.2d 487, 491 (Tex.App.-San Antonio 1995, no writ), for holding that "[a] plea in intervention in the principal suit is an appropriate vehicle by which a discharged attorney may recover fees for services rendered"); *Lerma v.*

*Forbes,* 166 S.W.3d 889, 893 (Tex.App.-El Paso 2005, pet. denied) (holding that section 31.002(d) contemplates the filing of an intervention by an attorney to collect unpaid fees in a suit).

trial court except for just cause. Tex. R.App. P. 25.1(c); *Wagner & Brown, Ltd. v. Horwood,* 58 S.W.3d 732, 737 (Tex.2001). Although the circumstances constituting "just cause" are not addressed in rule 25.1 and have not been developed in the case law, Texas appellate courts have uniformly declined to afford relief to parties who have not filed a notice of appeal and make no showing of just cause. *Warwick Towers Council of Co-Owners ex rel. St. Paul Fire & Marine Ins. Co. v. Park Warwick, L.P.,* 218 S.W.3d 149, 150–51 (Tex.App.-Houston [14th Dist.] 2007, pet. filed). Similarly, an appealing party may not complain of errors that do not injuriously affect it or that merely affect the rights of others. *Torrington Co. v. Stutzman,* 46 S.W.3d 829, 843 (Tex.2000); *Warwick Towers,* 218 S.W.3d at 150–51.

■ Here, the trial court's judgment ordered Southern Bleacher—not Jo Ann— to pay the arbitrators' fees in connection with the arbitration proceeding.[14] It also ordered Southern Bleacher to pay the arbitrators' reasonable and necessary attorneys' fees of $32,250 for trial, with additional fees conditioned upon the filing of an appeal. In accordance with rule 25.1(c), because Southern Bleacher did not file a notice of appeal, we may not grant it relief.[15] *See* Tex.R.App. P. 25.1(c); *Warwick Towers,* 218 S.W.3d at 151; *Tex–Hio P'ship v. Garner,* 106 S.W.3d 886, 893 (Tex.App.-Dallas 2003, no pet.).

■ Jo Ann contends that Southern Bleacher was never a party to the case

because it was never properly served; thus, it was not required to file a notice of appeal. The employees' petition in intervention named Southern Bleacher, Southern Bleacher Construction Co., Inc. and Southern Bleacher Manufacturing Inc. as defendants. All three companies joined Jo Ann in filing a motion to strike the intervention; however, none of the companies challenged the trial court's jurisdiction over the companies, nor did they challenge the alleged defective service. The substance of the motion to strike was directed at the propriety of the intervention. Accordingly, by joining in the motion to strike, and filing an answer conditioned on the motion to strike, without filing a special appearance or challenging the defective service, Southern Bleacher made a general appearance in the case. Tex.R. Civ. P. 120, 121; *Baker v. Monsanto Co.,* 111 S.W.3d 158, 160–61 (Tex.2003) (noting that answer to plea in intervention did not challenge trial court's jurisdiction, nor did party challenging intervention file motion to quash for defective service; thus, party made general appearance); *cf. Silbaugh v. Ramirez,* 126 S.W.3d 88, 94 (Tex.App.-Houston [1st Dist.] 2002, no pet.) (holding no general appearance when motion to strike intervention made subject to special appearance). Because Southern Bleacher made a general appearance in the suit, and because Jo Ann never appealed in her capacity as the representative or 100% owner of Southern Bleacher, Southern Bleacher should have filed a notice of appeal if it wished to challenge the trial

---

**14.** The record shows that Southern Bleacher paid the arbitration fees for all proceedings prior to Impasse 27A.

**15.** The trial court ordered Southern Bleacher, not Jo Ann personally, to pay these fees. Although Jo Ann is the sole shareholder of Southern Bleacher, there is nothing in the record to indicate that she would be personally liable for these fees. *See* Tex. Bus. Org.Code

Ann. §§ 21.223–.225 (Vernon Supp.2006); *Willis v. Donnelly,* 199 S.W.3d 262, 272 & nn. 13–16 (Tex.2006) (holding that sole shareholders of corporation were not liable under agreement because jury rejected claim that shareholders committed fraud and there was no evidence that shareholders agreed to be personally liable under agreement).

court's judgment. *See, e.g.,* TEX.R.APP. P. 25.1(c). Accordingly, we overrule Jo Ann's second issue.

### Interest on the Judgment

Appellees and cross-appellants Martin, Bearden, and Sink contend in their sole cross-issue, and Jo Ann does not dispute, that the trial court erred by awarding pre- and post-judgment interest at the rate of 7.75% per year, instead of 8.25%, because the trial court's September 6, 2006 letter indicates that the trial court intended the interest rate to be 8.25%.

The statutory post-judgment interest rate to be applied to a money judgment is determined by the consumer credit commissioner. TEX. FIN.CODE ANN. § 304.003(b) (Vernon 2006). That rate is published in the Texas Register by the Secretary of State. *Id.* § 304.004. The Texas Supreme Court has held that the rate of pre-judgment interest is the same as the rate of post-judgment interest at the time of judgment. *Johnson & Higgins of Tex., Inc. v. Kenneco Energy, Inc.,* 962 S.W.2d 507, 529 (Tex.1998). A trial court must take judicial notice of the published post-judgment interest rate at the time of judgment. TEX. FIN.CODE ANN. § 304.007.

 This court may take judicial notice of the correct, published rate on appeal. *Office of Pub. Util. Counsel v. Pub. Util. Comm'n of Tex.,* 878 S.W.2d 598, 600 (Tex. 1994). When the trial court entered its final judgment on October 20, 2006, the post-judgment interest rate as determined by the consumer credit commissioner was 8.25%. Judgment Rate Summary, http://www.occc.state.tx.us/pages/int_6drates/Index.html (last visited Sept. 12, 2007). Thus, the trial court's judgment should have reflected pre- and post-judgment interest at the rate of 8.25%, not 7.75%. We sustain the arbitrators' sole cross-issue.

### CONCLUSION

Having sustained the arbitrators' sole cross-issue, we modify that part of the trial court's judgment awarding pre- and post-judgment interest at the rate of 7.75% per year to award pre-judgment and post-judgment interest at the rate of 8.25% per year. *See* TEX.R.APP. P. 43.2(b). Having overruled Jo Ann's three issues and Sherrill and the employees' first cross-issue, we affirm the remainder of the judgment as modified.