**Opinion issued April 7, 2015**



In The

# Court of Appeals

For The

# First District of Texas

_____

## NO. 01-13-00511-CV

_____

**KELLI MCDONALD SYDOW, Appellant**

**V.**

**MICHAEL DAVID SYDOW, Appellee**

---

**On Appeal from the 308th District Court**
**Harris County, Texas**
**Trial Court Case No. 2010-02710**

---

## MEMORANDUM OPINION

Kelli McDonald Sydow is appealing the trial court's order granting Michael

David Sydow's motion to clarify the couple's final divorce decree. In three issues,

Kelli[1] argues that the trial court abused its discretion and exceeded its authority

---

[1]     For the sake of clarity, we will refer to the parties by their given names.

because, instead of clarifying the divorce decree, the trial court impermissibly changed the substantive division of the parties' marital estate and reallocated significant marital property liabilities.

We declare the trial court's order of clarification void and dismiss the appeal for want of jurisdiction.

## Background

Michael and Kelli owned and resided in Unit 1103 at the Houstonian Estates during most of their marriage. In 2008, MJOE Lending Investments, Inc. purchased another condominium unit in the same building—Unit 904. MJOE is a single investment real estate company organized by Michael's law firm on behalf of one of the firm's clients.

Michael testified that in July or August 2008 he made a verbal agreement with MJOE to rent the unit to Michael and his family. Under the terms of that agreement, Michael and his family "could live in Unit 904, so long as, [they] paid the taxes, insurance, homeowners' association fees and expenses associated with Unit 904, and agree[d] to maintain Unit 904 in good repair and condition, and to vacate Unit 904 upon request." Kelli was not present during any of the conversations leading up to this informal agreement and testified that she mistakenly believed that she and Michael were the owners of Unit 904.

2

Michael, Kelli, and their ten-year-old son moved into Unit 904 in the fall of 2008. Michael and Kelli separated in July 2009, and Michael moved back to the family's prior residence, Unit 1103. Kelli remained in Unit 904 and the couple's son split his time between both units. Michael filed a petition for divorce in January 2010.

After a series of hearings in February, March, and April 2010, the trial court entered temporary orders on April 20, 2010 (the Temporary Orders). The Temporary Orders named Michael and Kelli as temporary joint managing conservators, set the Houstonian as their son's primary residence, and ordered that neither parent could change the child's primary residence without further order of the court or the written agreement of the parties.[2] The court also awarded temporary use and possession of Unit 904 to Kelli, temporary use and possession of Unit 1103 to Michael, and required Michael to pay certain expenses associated with both units, including the Unit 904 property taxes, homeowners' insurance, utilities, and maintenance fees, which totaled over $4,500 per month (the 904 Expenses).[3] At the time the Temporary Orders were entered, Kelli had been a

---

[2] Kelli testified that she had advised the court that she wanted to move out of the Houstonian in order to be closer to her son's extracurricular activities in Tomball, Texas. Michael, however, objected and requested that the trial court set their son's residence at the Houstonian.

[3] Specifically, the Temporary Orders required Michael to pay the following monthly expenses for Unit 904: $2,057.00 (property taxes), $2,070.00 (maintenance fees),

stay-at-home mom for the previous fifteen years and did not have the income to pay for the 904 Expenses during the pendency of the divorce.

At some point in 2010, Michael stopped paying the 904 Expenses, as the Temporary Orders required. After being notified that the taxes for Unit 904 had not been paid, Kelli became concerned about a possible tax foreclosure and filed a petition for enforcement on September 20, 2010, asking the court to compel Michael to pay the outstanding property taxes.[4] On September 28, 2010, the purported owner of Unit 904 notified Kelli that it was planning to sell the unit and demanded that she vacate the property within thirty days.[5] Kelli, who testified that she believed that she and Michael owned the property, did not comply, and Kelli and her son were evicted from Unit 904 on March 4, 2011.[6]

On April 5, 2011, Kelli and Michael entered into a binding mediated settlement agreement (the MSA). By its express terms, the MSA provided:

---

[4] and $131.13 (homeowners' insurance). Michael was also required to pay up to $400.00 per month in utilities for the unit.

[4] Michael testified that he paid the property taxes for Unit 904 until September 2010.

[5] MJOE executed a deed transferring ownership of Unit 904 to Greenwich Real Estate Corp. (GREC) on September 24, 2010. Both GREC and MJOE are owned or controlled by Michael's client, Marcelo Heredia Montalvo.

[6] The record reflects that the owner of Unit 904 later sued Kelli for rent and other expenses under a breach of contract theory in a related case pending before another trial court. The trial court in that case held that Kelli was not liable for any past due 904 Expenses based on breach of contract because there was no contract between Kelli and the owner of 904.

The undersigned parties, [Kelli] and [Michael], agree to compromise the claims and controversies currently at issue in the pending action . . . . As to the property issues, the parties agree and stipulate that they have taken into consideration all claims that one could or should have made, including but not limited to debts of either party, characterization of marital and separate property, valuation of property, tax effects of all property division, and all pending claims and motions which were disputed prior to this settlement. The parties each acknowledge that to the best of their knowledge both parties have made to the other a full and fair disclosure of all known debts and assets and are entering into this agreement freely and voluntarily . . . . The provisions of this agreement shall be effective immediately as a contract, shall supersede any temporary orders or other agreements of the parties with respect to the subject matter hereof.

Schedules attached to the MSA and incorporated by reference identified specific debts and expressly allocated those between Michael and Kelli as part of the overall property division. Existing or outstanding obligations regarding Unit 904 were not among those debts expressly identified in the schedules. The MSA further provided that any and all "undisclosed" and "undivided" community liabilities would be paid by the party incurring the liability and further provided that "[a]ll debts and/or liabilities in the name of Michael Sydow or incurred solely by Michael Sydow not divided herein" would be paid by Michael, and "[a]ll debts and/or liabilities in the name of Kelli Sydow or incurred solely by Kelli Sydow not divided herein" would be paid by Kelli.

The trial court rendered judgment on May 10, 2011, and a final divorce decree was signed on September 9, 2011 (the Final Decree). Paragraph HD-2 of the Final Decree required Michael to pay "[a]ll debts, charges, liabilities, and other

obligations incurred by [Michael] during the marriage, unless express provision is made in this Decree to the contrary." Similarly, paragraph WD-2 of the Final Decree required Kelli to pay "[a]ll debts, charges, liabilities, and other obligations incurred by [Kelli] during the marriage, unless express provision is made in this Decree to the contrary." In accordance with the terms of the MSA, the Final Decree also assigned unexpressed, undivided, and undisclosed community liabilities to the party incurring them.[7] Like the MSA, the Final Decree did not expressly refer to the 904 Expenses. The Final Decree also stated that the parties "are discharged from all further liabilities and obligations imposed by the temporary orders of this Court."

On March 1, 2013, Michael filed a Petition for Enforcement, Motion for Clarification and in the Alternative Post Divorce Division of Debt (the Petition to Clarify), asking the court to compel Kelli to pay any outstanding 904 Expenses, pursuant to the Final Decree.[8] After a hearing on the matter, the trial court granted Michael's petition and clarified the Final Decree to award "all liability of either

---

[7]  "Undivided Assets and Liabilities . . . . IT IS FURTHER ORDERED AND DECREED, as a part of the division of the estate of the parties, that any community liability not expressly assumed by a party under this Decree is to be paid by the party incurring the liability, and the party incurring the liability shall indemnify and hold the other party and his or her property harmless from any failure to so discharge the liability."

[8]  Michael also asked the court to enter an order clarifying that Kelli was responsible for these liabilities, in the event the court found that the part of the decree Michael was asking the court to enforce was not specific enough to be enforced by contempt.

party for taxes, maintenance fees and condominium association dues, and insurance related to Unit or Apartment 904 at the Houstonian Estates condominiums which liability accrued, became due, or shall hereafter accrue or become due for the period from August 1, 2009 to March 4, 2011" to Kelli, based in part on its finding that Kelli had "exclusive use and possession of Unit 904 from August 1, 2009 to March 4, 2011," and the court's conclusion that "[t]he Final Decree supersedes all liabilities and obligations imposed upon either party by the Temporary Orders." On July 31, 2013, the trial court entered findings of fact and conclusions of law.

## Standard of Review and Applicable Law

The court that rendered the divorce decree retains continuing subject matter jurisdiction to enforce and to clarify the decree's property division pursuant to specific provisions of the Family Code after the court's plenary power expires. *See Gainous v. Gainous*, 219 S.W.3d 97, 106, 108 (Tex. App.—Houston [1st Dist.] 2006, pet. denied). In particular, a court has continuing jurisdiction to render further orders to enforce the division of the property made in the decree of divorce to assist in the implementation of or to clarify the prior order. *See* TEX. FAM. CODE ANN. § 9.006(a) (West Supp. 2014); *Gainous*, 219 S.W.3d at 106. Similarly, on the request of a party or on the court's own motion, the court may enter a clarifying order setting forth specific terms to enforce compliance with an original division of

7

property on a finding that the original division of property is not specific enough to be enforceable by contempt. *See* TEX. FAM. CODE ANN. § 9.008 (West 2006); *Gainous*, 219 S.W.3d at 106.

However, there are limitations on the enforcement and clarification powers of the court that rendered the divorce decree. *Gainous*, 219 S.W.3d at 106. A court may not amend, modify, alter, or change the division of property made or approved in the divorce decree after its plenary power expires. *See* TEX. FAM. CODE ANN. § 9.007(a) (West 2006); *Shanks v. Treadway*, 110 S.W.3d 444, 449 (Tex. 2003). An order that amends, modifies, alters, or changes the divorce decree's property division is beyond the power of the court. *See* TEX. FAM. CODE ANN. § 9.007(b) (West 2006); *Gainous*, 219 S.W.3d at 106–07. Accordingly, section 9.007 of the Texas Family Code is jurisdictional and orders violating its restrictions are void. *Gainous*, 219 S.W.3d at 108.

We review a trial court's order on a motion for enforcement or clarification of a final decree of divorce under an abuse of discretion standard. *Id.* at 103. A trial court abuses its discretion when it (1) acts unreasonably, arbitrarily, or without reference to any guiding rules or principles or (2) erroneously exercises its power by making a choice outside the range of choices permitted the court by law. *See Downer v. Aquamarine Operators, Inc.*, 701 S.W.2d 238, 241–42 (Tex. 1985); *Murray v. Murray*, 276 S.W.3d 138, 143 (Tex. App.—Fort Worth 2008, pet.

8

dism'd). "A trial court abuses its discretion as to legal issues when it fails to analyze or apply the law correctly." *In re D.S.*, 76 S.W.3d 512, 516 (Tex. App.—Houston [14th Dist.] 2002, no pet.). The trial court's conclusions of law are reviewed de novo. *Busch v. Hudson & Keyse, LLC*, 312 S.W.3d 294, 299 (Tex. App.—Houston [14th Dist.] 2010, no pet.).

We interpret the language of a divorce decree as we do other judgments of courts. *Hagen v. Hagen*, 282 S.W.3d 899, 901 (Tex. 2009) (citing *Shanks*, 110 S.W.3d at 447). We construe the decree as a whole to harmonize and give effect to the entire decree. *Id.*; *see Constance v. Constance*, 544 S.W.2d 659, 660 (Tex. 1976). If the decree is unambiguous, the appellate court must adhere to the literal language used. *Hagen*, 282 S.W.3d at 901. If the decree is ambiguous, it is interpreted by reviewing both the decree as a whole and the record. *Id.* Whether a divorce decree is ambiguous is a question of law. *Id.* at 901–02.

## Discussion

In three issues, Kelli argues that (1) the trial court abused its discretion and exceeded its authority when it issued the May 2013 order because, instead of clarifying the divorce decree, the trial court impermissibly changed the substantive division of the parties' marital estate as set forth in the decree and reallocated significant marital property liabilities in violation of Family Code section 9.007; (2) the trial court erred in clarifying the Final Decree to provide that the 904

Expenses were incurred by Kelli and are her sole obligation; and (3) the trial court abused its discretion when it reallocated marital property liabilities without reference to the factors outlined by the Texas Supreme Court in *Murff v. Murff*, 615 S.W.2d 696, 699 (Tex. 1981).

**A. Did the May 2013 order alter the substantive division of the parties' marital estate as set forth in the Final Decree?**

Kelli argues that Michael incurred the 904 Expenses during their marriage pursuant to the terms of the Temporary Orders and, therefore, the Final Decree allocated those liabilities to Michael. Kelli further contends that the trial court's May 2013 order altered the substantive division of the parties' marital estate by reallocating those substantial expenses to her.

**1. Impact of the Temporary Orders**

It is undisputed that the Temporary Orders required Michael to pay the 904 Expenses. The parties disagree about the relevancy of the Temporary Orders to the question of which spouse is liable to the other for the 904 Expenses.

Michael argues that the Temporary Orders are irrelevant with respect to which party incurred the 904 Expenses because the Temporary Orders were superseded by the MSA in April 2011 and, thus, they were of no force and effect when the Final Decree was entered in September 2011. Specifically, Michael argues that the MSA modified and/or released him from any prior obligations imposed by the Temporary Orders based upon the following language: "The

10

provisions of this [MSA] shall be effective immediately as a contract, shall supersede any temporary orders or other agreements of the parties with respect to the subject matter hereof." Michael argues that the trial court merely construed the Final Decree and clarified it to reflect that the Temporary Orders had been superseded by the MSA and, therefore, were longer of any force or effect.

Kelli contends that the MSA only relieved the parties of any future obligations imposed by the Temporary Orders; it did not relieve the parties of their past obligations that had already accrued. Kelli further argues that because there was no order relieving Michael of his prior obligations imposed by the Temporary Orders despite his specific attempts to obtain such relief,[9] the 904 Expenses were obligations incurred by Michael pursuant to the terms of the Temporary Orders and the MSA when the Final Decree was entered.

The term "supersede," which is not defined in the MSA, is commonly understood to mean "to replace," "to cause to be set aside," or "to take the place of." *See* www.merriam-webster.com/dictionary/supersede; *see also Milner v. Milner*, 361 S.W.3d 615, 618–19, 627 (Tex. 2012) (holding MSAs are subject to usual rules of contract interpretation and stating that undefined contract terms are given their plain, ordinary, and generally accepted meaning). Based on the plain

---

[9]     Michael filed three motions to modify the Temporary Orders beginning in September 2010 in which he asked the court to terminate his obligation to pay 904 Expenses, but none of these motions were ever ruled upon.

meaning of the term supersede, it is apparent that the parties agreed that the MSA replaced or took the place of the Temporary Orders as of the MSA's effective date, thereby terminating any future or continuing obligations imposed by the Temporary Orders. *See Milner*, 361 S.W.3d at 619 (stating that construction is matter for court when agreement can be given certain and definite meaning). The MSA, the terms of which were subsequently incorporated into the Final Decree, did not explicitly set aside or nullify any prior obligations imposed by the Temporary Orders that had already accrued. Case law holds that a final divorce decree "supersedes" temporary orders, but does not extinguish liabilities that have already accrued thereunder. *See Pettus v. Pettus*, 237 S.W.3d 405, 416 (Tex. App.—Fort Worth 2007, pet. denied) (noting that "the rendition of a divorce decree does not itself nullify any temporary order" and that obligation fixed by temporary order continues after divorce decree unless specifically modified by decree); *Ex parte Shaver*, 597 S.W.2d 498, 500 (Tex. App.—Dallas 1980, no writ) (holding that final divorce decree did not nullify temporary order with respect to past due payments; rather, it superseded temporary order with respect to future support).

More importantly, this interpretation is also consistent with the plain language of the Final Decree, which the parties agreed would be based on the terms of the MSA. The Final Decree states that the parties "are discharged from

all *further* liabilities and obligations imposed by the temporary orders of this Court." Notably, the Final Decree does not discharge the parties from any previously accrued liabilities and obligations imposed by the Temporary Orders, only future liabilities and obligations.

Accordingly, we hold that neither the Final Decree nor the MSA altered or discharged Michael's obligations to pay the 904 Expenses that had already accrued pursuant to the Temporary Orders. Based on the plain language of the Final Decree, we further hold that the trial court erred by concluding that "[t]he Final Decree supersedes *any and all liabilities and obligations* imposed upon either party by the Temporary Orders." *See Busch*, 312 S.W.3d at 299 (reviewing conclusions of law de novo); *see also Hagen*, 282 S.W.3d at 901 (stating courts must adhere to literal language used in unambiguous divorce decree).

The Temporary Orders provided that Michael was the spouse legally obligated to pay for 904 Expenses, as between Michael and Kelli. Having concluded that the MSA did not relieve Michael of his past obligations under the Temporary Orders, we hold that at the time the parties entered the MSA and the court entered the Final Decree, the 904 Expenses were obligations incurred by Michael pursuant to the terms of the Temporary Orders. By shifting those liabilities to Kelli, the court erroneously modified the division of property made or approved in the divorce decree after its plenary power expired in violation of

13

Family Code section 9.007. *See* TEX. FAM. CODE ANN. § 9.007(a); *Shanks*, 110 S.W.3d at 449. Accordingly, the trial court's May 2013 order purporting to clarify the Final Decree is void. *Gainous*, 219 S.W.3d at 108.

## Conclusion

We declare the trial court's order of clarification void and dismiss the appeal for want of jurisdiction. *See State ex rel. Latty v. Owens*, 907 S.W.2d 484, 486 (Tex. 1995); *Moore Landry, L.L.P. v. Hirsch & Westheimer, P.C.*, 126 S.W.3d 536, 543 (Tex. App.—Houston [1st Dist.] 2003, no pet.).


Russell Lloyd
Justice

Panel consists of Chief Justice Radack and Justices Brown and Lloyd.