**Affirm in part; Reverse and Remand in part; Opinion Filed February 27, 2014.**



In The

# Court of Appeals
# Fifth District of Texas at Dallas

### No. 05-12-00857-CV

## HUMITECH DEVELOPMENT CORPORATION, AND EMIL LIPPE, JR., Appellants
### V.
## ALAN PERLMAN, MICHAEL PERLMAN, ANN PERLMAN, DAVID PERLMAN MICHELLE PERLMAN BERKE, BETH PERLMAN DREIFACH, HARRY SHER, AND BETTY SHER, Appellees

### On Appeal from the 191st Judicial District Court
### Dallas County, Texas
### Trial Court Cause No. DC-09-9266-J

## OPINION

Before Justices O'Neill, Myers, and Brown
Opinion by Justice Myers

Humitech Development Corporation (HDC) appeals the trial court's judgment confirming an arbitration award in favor of Alan Perlman, Michael Perlman, Ann Perlman, David Perlman, Michelle Perlman Berke, Beth Perlman Dreifach, Harry Sher, and Betty Sher. HDC's counsel, Emil Lippe, Jr., appeals the trial court's order imposing a $10,000 sanction against him. Appellants bring seven issues on appeal, contending (1) the arbitration proceeding was governed by Texas law; (2) the arbitrator exceeded his authority; (3) the arbitrator manifestly disregarded Texas law or made a gross error in the arbitration award; (4) the arbitrator's award violated the public policy against kickbacks and bribes; (5) the trial court erred by confirming the award without evidentiary support for the award and by applying the wrong

legal standard to HDC's motion to vacate the award; (6) the trial judge erred by failing to recuse herself or be disqualified; and (7) the trial court erred by imposing a sanction against Lippe. We affirm the trial court's confirmation of the arbitration award, but we reverse the trial court's order imposing a sanction against Lippe, and we remand the cause to the trial court for further proceedings on appellees' motion for sanctions.

## BACKGROUND

In 1983, appellee Alan Perlman staked claims (in his own name and in the names of the other appellees, his family members) on land controlled by the federal Bureau of Land Management in southern California to mine Sorbite, a type of diatomaceous earth found only in that area that is the raw material used in filters installed in food freezers. Humitech International Group (HIG) used Sorbite in the filters it manufactured and sold. In 2001, Perlman agreed with C.J. Comu, HIG's CEO, chairman of the board of directors, and majority stock owner, to pay Comu $500,000 if Comu brought Perlman a buyer of the mining claims for $2 million. Also in 2001, Perlman contracted with HIG to supply HIG with its needs for Sorbite. In 2003, HIG decided to buy appellees' interest in the mining claims to reduce its costs for Sorbite. Perlman, representing appellees, and Comu, representing HIG, agreed on a price of $2 million[1] for appellees' interest in the claims. The parties' agreement contained a provision requiring any dispute be arbitrated.[2]

---

[1] By the time of the closing of the transaction, HIG owned three percent of the mining claims. The final purchase price was reduced by three percent to $1,940,000.

[2] The purchase agreement contained a provision for "Dispute Resolution":

> Any controversy or claim arising out of or relating to this Agreement or the transactions contemplated or consummated pursuant to this Agreement (a "*Dispute*"), shall be resolved either by direct negotiations between the parties, or, if the parties cannot resolve such Dispute within 60 days after one party gives the other written notice that a Dispute exists, by mediation held in Dallas, Texas through the personnel, facilities and mediation rules of Judicial Arbitration and Mediation Services, Inc. ("JAMS"). If any such Dispute is not resolved by mediation within 30 days after mediation commences, such Dispute shall be resolved by binding arbitration held in Dallas, Texas using JAMS' personnel, facilities and commercial arbitration rules.

HIG created appellant HDC to purchase appellees' claims. The purchase was funded by an unaffiliated company, King Louie Mining, owned by Ronald Katz. King Louie Mining loaned the purchase price to HIG, and King Louie Mining took the shares of HDC as security for the loan to HIG. When Perlman received the purchase price, he paid Comu $500,000 as he had promised.

HIG, HDC, and their affiliates' filter business faltered. In 2006, HIG defaulted on its debt to King Louie Mining, and King Louie Mining foreclosed on the shares of HDC. Katz and King Louie Mining then controlled HDC.

When Katz learned of the $500,000 payment to Comu, HDC brought a claim in arbitration against appellees for numerous causes of action, including for fraud incident to Perlman's payment of $500,000 to Comu. HDC sought rescission of the purchase agreement and return of the purchase price or, alternatively, damages in the amount of the purchase price. The arbitrator presided over the trial of the case at which the parties presented witness testimony and other evidence. The arbitrator issued the "Final Award," ruling that HDC take nothing on its claims against appellees.

The arbitration award discusses HDC's fraud claim concerning the $500,000 payment to Comu as follows:

> On the causes of action pled, HDC's claim for fraud depends entirely upon [Stuart] Ducote [an officer and director of HDC] having no knowledge of the payment agreement with Comu and Perlman knowing that Ducote did not know of the payment agreement. To be liable for fraud, Perlman must have intentionally paid an undisclosed/secret "kickback". Having heard Ducote testify for more than eight hours, this Arbitrator finds him not credible and unworthy of belief on the question of his knowledge of the Comu payment agreement. Ducote was sued along with Comu and [Ivan] Gatti [an officer and director of HIG], but managed to bargain his affidavit and testimony for his dismissal from that suit. Ducote was brought to HIG by Comu and performed his duties as CFO and director of HIG as instructed by Comu and with little or no regard to his duties to HIG. Perlman had never heard of Katz or KLM [King Louie Mining] when he first agreed to pay Comu a $500,000 "finders fee" if Comu could bring him a buyer for his BLM [Bureau of Land Management] claims. Comu did bring a

–3–

buyer, himself and his new company HDC, a wholly owned subsidiary of Comu's other company HIG of which Comu was the majority shareholder. Comu and Ducote were the only officers and directors of HDC. If they both knew of the $500,000 payment agreement, then Perlman's failing to tell Ducote means nothing; he already knew and HDC already knew.

In contrast to Ducote, this Arbitrator finds Perlman to be quite credible. Under these circumstances, Perlman had reason to believe that Ducote knew that Comu would receive a finder's fee. Perlman had no intent to defraud HDC. Perlman was simply paying a finder's fee originally contemplated for a sale of the mine.

HDC, represented by Emil Lippe, Jr., then filed this suit to vacate the arbitration award, and appellees filed a petition to confirm the arbitration award. The petition to vacate the arbitration award alleged the statutory ground that the arbitrator exceeded his powers and the common-law grounds that the arbitrator acted in manifest disregard of the law, and that the final award contained gross error and violated public policy. The trial court denied the request to vacate the arbitration award and ordered the arbitration award confirmed. The trial court also imposed a sanction of $10,000 on Lippe because the factual allegations in three paragraphs of HDC's original petition to vacate the arbitration award lacked evidentiary support.

## COMMERCIAL BRIBERY

Many of appellants' arguments concern whether Perlman's payment to Comu was an illegal commercial bribe. Appellants cite section 32.43 of the Texas Penal Code, which defines commercial bribery as follows:

> (b) A person who is a fiduciary commits an offense if, without the consent of his beneficiary, he intentionally or knowingly solicits, accepts, or agrees to accept any benefit from another person on agreement or understanding that the benefit will influence the conduct of the fiduciary in relation to the affairs of his beneficiary.

> (c) A person commits an offense if he offers, confers, or agrees to confer any benefit the acceptance of which is an offense under Subsection (b).

–4–

TEX. PENAL CODE ANN. § 32.43(b), (c) (West 2011).[3] Appellants defined fraud in the form of a commercial bribe as "the payment of a secret commission to a corporate fiduciary." The arbitrator likewise concluded that resolution of whether the payment to Comu was a fraud on HDC depended on whether the payment was disclosed to the company. The arbitrator concluded that if both Comu and Ducote, the only officers and directors of HDC, knew of the payment agreement, then the payment was not fraudulent. The arbitrator, after weighing the evidence and the credibility of the witnesses determined that Ducote knew of the payment agreement, the payment was a finder's fee, and there was no intent to defraud HDC.

Appellants state in their brief, "It is, therefore, crystal clear that Appellees' conduct was illegal under Texas law. The arbitrator exceeded his powers by finding such conduct acceptable." However, the arbitrator's determination that there was no fraud in the form of an illegal kickback was based on the arbitrator's determination of the credibility of the witnesses and the weight of the evidence, to which the reviewing courts must give due deference. *See Quinn v. Nafta Traders, Inc.*, 360 S.W.3d 713, 722 (Tex. App.—Dallas 2012, pet. denied). Therefore, it was not "crystal clear that Appellees' conduct was illegal under Texas law," and the arbitrator made no finding that illegal conduct was "acceptable."

## ARBITRATION

Arbitration of disputes is strongly favored under Texas law. *Prudential Secs. Inc. v. Marshall*, 909 S.W.2d 896, 898 (Tex. 1995) (per curiam). We review a trial court's decision to vacate or confirm an arbitration award de novo, based on review of the entire record. *Cambridge Legacy Group, Inc. v. Jain*, 407 S.W.3d 443, 447 (Tex. App.—Dallas 2013, pet. denied). "[A]n award of arbitrators upon matters submitted to them is given the same effect as the judgment of a

---

[3] Nothing in the record shows HDC raised section 32.43 before the arbitrator. One court of appeals has concluded that a violation of section 32.43 does not give rise to a private cause of action. *See LeBlanc v. Lange*, 365 S.W.3d 70, 87 (Tex. App.—Houston [1st Dist.] 2011, no pet.).

court of last resort. All reasonable presumptions are indulged in favor of the award, and none against it." *CVN Group, Inc. v. Delgado*, 95 S.W.3d 234, 238 (Tex. 2002) (quoting *City of San Antonio v. McKenzie Constr. Co.*, 150 S.W.2d 989, 996 (Tex. 1941)). The award is presumed valid, and it is entitled to great deference. *Cambridge Legacy Group*, 407 S.W.3d at 447. The award is conclusive on the parties as to all matters of fact and law; in other words, we may not vacate an award even if it is based upon a mistake of fact or law. *Id.* at 448; *Centex/Vestal v. Friendship W. Baptist Church*, 314 S.W.3d 677, 683 (Tex. App.—Dallas 2010, pet. denied). We may not substitute our judgment for that of the arbitrators merely because we would have reached a different decision. *Cambridge Legacy Group*, 407 S.W.3d at 447.

## CHOICE OF LAW

In their first issue, appellants contend the trial court erred by determining the Federal Arbitration Act (FAA) applied and not the Texas General Arbitration Act (TAA). *See* 9 U.S.C. §§ 1–16; TEX. CIV. PRAC. & REM. CODE ANN. §§ 171.001–.098 (West 2011). The trial court initially ruled that the FAA applied to the exclusion of the TAA, and the court denied HDC's petition to vacate the arbitration award and granted appellees' motion to confirm the arbitration award. Later, the court sent the parties a letter stating that the TAA applied but that the outcome of the case remained the same. On appeal, appellants argue that the arbitration proceeding was governed exclusively by Texas law. Appellees argue that the FAA applies to the exclusion of the TAA, but they assert that appellants cannot prevail under either act.

In Texas, a written arbitration agreement in a transaction involving commerce that does not specify that federal law or the law of another state applies is subject to *both* Texas and federal law.[4] *See Volt Info. Scis., Inc. v. Bd. of Trs. of Leland Stanford Junior Univ.*, 489 U.S. 468, 477–78 (1989) (contract specified California law); *Nafta Traders, Inc. v. Quinn*, 339

---

[4] However, the TAA does not apply to certain arbitration agreements. *See* CIV. PRAC. § 171.002.

S.W.3d 84, 87, 97 & n.64 (Tex. 2011) (contract did not specify whether state or federal law applied). The FAA does not preempt the TAA except "to the extent that [the state law] actually conflicts with federal law—that is, to the extent that it 'stands as an obstacle to the accomplishment and execution of the full purposes and objectives of Congress.'" *Nafta Traders*, at 97–98 (quoting *Volt*, 489 U.S. at 477–78 (1989) (quoting *Hines v. Davidowitz*, 312 U.S. 52, 67 (1941))).

In *Hall Street Assocs., L.L.C. v. Mattel, Inc.*, 552 U.S. 576 (2008), the Supreme Court indicated that state statutes or common-law provisions permitting review of an arbitration award beyond that authorized by the FAA would not be preempted by the FAA:

> In holding that §§ 10 and 11 [of the FAA] provide exclusive regimes for the review provided by the statute, we do not purport to say that they exclude more searching review based on authority outside the statute as well. The FAA is not the only way into court for parties wanting review of arbitration awards: they may contemplate enforcement under state statutory or common law, for example, where judicial review of different scope is arguable. But here we speak only to the scope of the expeditious judicial review under §§ 9, 10, and 11, deciding nothing about other possible avenues for judicial enforcement of arbitration awards.

*Id.* at 590. Thus, *Hall Street* indicates that Texas's common-law grounds for vacating an arbitration award—gross error, manifest disregard of the law, and violation of public policy— would not be preempted by the FAA.

Although we agree with appellants that the TAA applies in this case, the trial court also made that determination. Because appellants have not shown the trial court erred, we overrule appellants' first issue.

### EXCEEDING POWERS

In their second issue, appellants contend the arbitrator exceeded his powers by (a) committing a procedural error under the arbitration body's rules and (b) failing to apply Texas law properly.

Unless the party challenging the award offers grounds for vacating, modifying, or correcting an arbitration award, the trial court must confirm the award on the application of a party. CIV. PRAC. § 171.087. The TAA requires a trial court to vacate an arbitration award in specific circumstances, including when the arbitrators "exceeded their powers." *Id.* § 171.088(a)(3)(A).

Arbitrators derive their authority from the arbitration agreement, which limits their authority to deciding the matters submitted therein either expressly or by necessary implication. *Centex/Vestal*, 314 S.W.3d at 684. Arbitrators exceed their powers when they decide matters not properly before them. *Id.*; *Ancor Holdings, LLC v. Peterson, Goldman & Villani, Inc.*, 294 S.W.3d 818, 829 (Tex. App.—Dallas 2009, no pet.). Arbitrators may also exceed their powers when the arbitration award is not rationally inferable from the parties' agreement. *Ancor Holdings*, 294 S.W.3d at 830. Unless the arbitration agreement expressly provides otherwise, errors of fact or law do not constitute the exceeding of powers when those errors do not concern whether an issue to be decided was properly before the arbitrators or whether the arbitration award was rationally inferable from the parties' agreement.[5] *Nafta Traders*, 339 S.W.3d at 97–102; *Pheng Invs., Inc. v. Rodriquez*, 196 S.W.3d 322, 329 (Tex. App.—Fort Worth 2006, no pet.).

In *Nafta Traders*, the supreme court determined that the parties' agreement could restrict the arbitrator's authority to make mistakes of law and could provide that the decision be reviewable like a trial court decision. *Nafta Traders*, 339 S.W.3d at 101 ("The TAA, as we have construed it, permits parties to agree to expanded review, or to a corresponding limit on the

---

[5] *See also Humphrey v. Mesa Operating Ltd. P'ship*, No. 05-97-00827-CV, 1999 WL 652500, *5 (Tex. App.—Dallas Aug. 27, 1999, pet. denied) (not designated for publication). In that case, the arbitration agreement required that the arbitration hearing would be governed by the Texas rules of procedure and evidence and the common law consistent with those rules. *Id.* at *1. The trial court confirmed the award. On appeal, the appellant argued the award exceeded the arbitrators' powers because it was not rendered in accordance with Texas law and procedure. *Id.* at *5. This Court disagreed, stating the arbitrators' failure to follow Texas law and procedural rules "would not be a decision outside the issues submitted for arbitration. Any such error would not be subject to judicial review under the appealable category of whether the arbitrators exceeded their powers." *Id.*

arbitrator's authority, as in this case . . . ."). In that case, the arbitration agreement stated, "The arbitrator does not have authority (i) to render a decision which contains a reversible error of state or federal law, or (ii) to apply a cause of action or remedy not expressly provided for under existing state or federal law." The supreme court concluded this arbitration agreement meant that the arbitrator lacked the power to make a reversible error of law and gave the courts the authority to review the arbitrator's decision for errors of law under the courts' authority to determine whether the arbitrator exceeded its powers. *Id.* However, the court stated that absent such a clear agreement, "the default under the TAA, and the only course permitted by the FAA, is restricted judicial review." *Id.*

### Failure to Follow Arbitration Body's Rules

Appellants argue that the arbitrator exceeded his powers because he did not enforce the arbitration body's rule requiring the parties to exchange documents before trial. Appellants assert that the arbitrator admitted documents offered by appellees over appellants' objection that the documents had not been exchanged as required by the arbitration body's rule. Appellants argue that the arbitrator's admission into evidence of these documents exceeded his powers. We disagree. The arbitration clause provided that the parties' "Dispute shall be resolved by binding arbitration held in Dallas, Texas using JAMS' . . . commercial arbitration rules." This clause did not purport to restrict the arbitrator's authority. *Cf. Nafta Traders*, 339 S.W.3d at 88 (arbitration agreement stated "arbitrator does not have authority (i) to render a decision which contains a reversible error of state or federal law").

The arbitrator's failure to follow a procedural rule concerning the admission of evidence did not deprive the arbitrator of authority to hear the case or result in an award not contemplated by the parties' contract. Consequently, the arbitrator's admission of this evidence did not constitute an exceeding of the arbitrator's powers under section 171.088(a)(3)(A).

Appellants state in their brief, "Under Texas law, the failure to follow the arbitrator's own rules and guidelines constitutes grounds for vacating an arbitration award," and cite *Pettus v. Pettus* in support of this statement. *See Pettus v. Pettus*, 237 S.W.3d 405 (Tex. App.—Fort Worth 2007 pet. denied). *Pettus*, however, does not support this statement when the violated rules or guidelines do not affect the arbitrator's authority to hear the case.

In *Pettus*, the parties were going through a divorce proceeding. *Pettus*, 237 S.W.3d at 408. The parties agreed to temporary orders for the management of their jointly owned businesses during the divorce proceeding. The agreed orders required that certain disputes in the management of the businesses be arbitrated, including whether and how much severance pay should be paid to the businesses' employees who were terminated during the divorce proceeding. The arbitrators established a rule that for those arbitrations, the parties were to invite the employees to be parties to the arbitration provided that the employees agreed to be bound by the arbitrators' decision. *Pettus*, 237 S.W.3d at 410. Subsequently, the trial court ordered that these procedures be "strictly followed" in any arbitration over severance pay. *Id.* at 413. A dispute arose over the severance pay for terminated employees, but the parties did not invite the employees to participate in the arbitration. *Id.* at 410, 413, 419. The arbitrators proceeded to hear the case without requiring the parties to invite the employees to become parties in the arbitration and be bound by the arbitration. *Id.* at 413, 419. The arbitrators awarded the employees $438,500 in severance pay. *Id.* at 413. The trial court vacated the arbitration award to the employees because the arbitrators did not direct the parties to comply with the trial court's order to invite the employees before hearing the case. *Id.* at 415, 419. The court of appeals observed that arbitrators "exceed their powers when they decide matters not properly before them." *Id.* at 419 (citing *Pheng Invs.*, 196 S.W.3d at 329). The court of appeals affirmed the vacating of the arbitration award because the arbitrators failed to follow their own declared

procedure (which the trial court had ordered be strictly followed) that the parties invite the employees to participate in the arbitration. *Id.* at 420. Although the court of appeals does not further explain its reasoning, it appears the court of appeals considered the arbitrators lacked the power to hear the severance-pay arbitration until the divorcing parties invited the employees to participate in the arbitration. Therefore, because the parties had not invited the employees to participate, the arbitrators had no authority to hear the severance-pay arbitration, and they exceeded their powers by doing so. *Pettus* does not stand for the proposition that a trial court must vacate an arbitration award anytime an arbitrator violates a procedural rule of the arbitration body.

### Failure to Follow Texas Substantive Law

Appellants also argue the arbitrator exceeded his powers by ruling that HDC take nothing on its claim. Appellants assert that the arbitrator exceeded his powers because he was required to follow the substantive law of Texas, "the undisputed evidence established that Appellees were guilty of commercial bribery, and the decision of the arbitrator has vindicated such behavior . . . ."

Appellants argue the arbitration agreement restricted the arbitrator's powers to following Texas law correctly, meaning the arbitrator had no authority to make a mistake of law. We disagree. Appellants' argument is based on the "Governing Law" law provision of the parties' contract:

> Governing Law. This agreement shall be enforced, governed by and construed in accordance with the laws of the State of Texas applicable to agreements made and to be performed entirely within such state, without regard to the principles of conflict of laws.

(Capitalization of all letters omitted.) This provision was the governing-law provision of the entire contract and was in a separate provision from the arbitration provision. The governing-law provision did not purport to restrict the arbitrator's authority to any extent that it was not

–11–

otherwise restricted by Texas law. This provision does not alter the "default" restricted judicial review of the arbitration award. *See Nafta Traders*, 339 S.W.3d at 101.

Even if the arbitrator failed to follow Texas substantive law in determining whether appellees committed fraud in the form of commercial bribery, that does not mean the arbitrator lacked the authority to determine the issue or that the arbitration award was not rationally inferable from the parties' agreement. It would mean only that the arbitrator made a mistake of fact or law, which does not constitute the arbitrator exceeding his powers under section 171.088(a)(3)(A). *See Pheng*, 196 S.W.3d at 329 ("A mistake of fact or law in the application of substantive law is insufficient to vacate an arbitration award."). We conclude appellants have not shown the arbitrator exceeded his powers. We overrule appellants' second issue.

## COMMON-LAW GROUNDS FOR VACATING ARBITRATION AWARD

In their third issue, appellants contend the arbitrator manifestly disregarded Texas law or committed a gross mistake in entering his award. In their fourth issue, appellants contend the arbitration award violated public policy.

Under the TAA, the courts have traditionally permitted certain common-law, non-statutory grounds for vacating an arbitration award, including manifest disregard of the law, gross mistake, and an award that violates public policy. The Supreme Court's decision in *Hall Street Assocs., L.L.C. v. Mattel, Inc.*, 552 U.S. 576 (2008), has cast doubt upon the continued viability of these common-law grounds. *See Townes Telecomms., Inc. v. Travis, Wolff & Co., L.L.P.*, 291 S.W.3d 490, 493 n.1 (Tex. App.—Dallas 2009, pet. denied). The Supreme Court of Texas has not yet ruled on whether the common-law grounds of manifest disregard, gross mistake, and public policy survive under the TAA. We will consider appellants' arguments concerning these grounds.

–12–

**Manifest Disregard and Gross Mistake**

Manifest disregard is a "very narrow" or "extremely limited" standard of review. *Xtria L.L.C. v. Int'l Ins. Alliance Inc.*, 286 S.W.3d 583, 594 (Tex. App.—Texarkana 2009, pet. denied) ("very narrow" standard); *Home Owners Mgmt. Enters., Inc. v. Dean*, 230 S.W.3d 766, 768–69 (Tex. App.—Dallas 2007, no pet.) ("extremely limited" standard). It is more than error or misunderstanding of the law. *Xtria L.L.C.*, 286 S.W.3d at 594; *Home Owners*, 230 S.W.3d at 768. The disregarding of the law is "manifest" if it was "obvious and capable of being readily and instantly perceived by the average person qualified to serve as an arbitrator." *Xtria L.L.C.*, 286 S.W.3d at 594; *Myer v. Americo Life, Inc.*, 232 S.W.3d 401, 411. The term "disregard" implies that the arbitrator "appreciate[d] the existence of a clearly governing principle but decided to ignore or pay no attention to it." *Myer*, 232 S.W.3d at 411. "In other words, the issue is not whether the arbitrator correctly interpreted the law, but whether the arbitrator, knowing the law and recognizing that the law required a particular result, simply disregarded the law." *Xtria L.L.C.*, 286 S.W.3d at 594; *see Pheng Invs., Inc. v. Rodriquez*, 196 S.W.3d 322, 332 (Tex. App.—Fort Worth 2006, no pet.)) ("Under this standard, the arbitrator clearly recognizes the law but chooses to ignore it or refuses to apply it correctly."). It is appellants' burden to demonstrate that the arbitrator manifestly disregarded the law. *Xtria L.L.C.*, 286 S.W.3d at 594; *Tanox, Inc. v. Akin, Gump, Strauss, Hauer & Feld, L.L.P.*, 105 S.W.3d 244, 253 (Tex. App.—Houston [14th Dist.] 2003, pet. denied).

Gross mistake is conceptually analogous to manifest disregard. *See Int'l Bank of Commerce v. Int'l Energy Dev. Corp.*, 981 S.W.2d 38, 48 (Tex. App.—Corpus Christi 1998, pet. denied). A gross mistake is a mistake that implies bad faith or a failure to exercise honest judgment and results in a decision that is arbitrary and capricious. *Xtria L.L.C.*, 286 S.W.3d at 598; *Werline v. E. Tex. Salt Water Disposal Co.*, 209 S.W.3d 888, 898 (Tex. App.—Texarkana

2006), *aff'd*, 307 S.W.3d 267, 268 (Tex. 2010); *Teleometrics Int'l, Inc. v. Hall*, 922 S.W.2d 189, 193 (Tex. App.—Houston [1st Dist.] 1995, writ denied). "A judgment rendered after honest consideration given to conflicting claims, no matter how erroneous, is not arbitrary or capricious." *Xtria L.L.C.*, 286 S.W.3d at 598.

The doctrines of manifest disregard and gross mistake do not extend to mere mistakes of fact or law. Judicial review of an arbitration award "is so limited that even a mistake of fact or law by the arbitrator in the application of substantive law is not a proper ground for vacating an award." *Centex/Vestal*, 314 S.W.3d at 683; *Xtria L.L.C.*, 286 S.W.3d at 591; *Universal Computer Sys., Inc. v. Dealer Solutions, L.L.C.*, 183 S.W.3d 741, 752 (Tex. App.—Houston [1st Dist.] 2005, pet. denied).

> Appellants argue,
>
> Here, the overwhelming evidence established that Comu, as CEO fiduciary of HDC, received a $500,000 kickback, amounting to 25% of the purchase price, for pushing through the purchase of worthless "mining rights," in a transaction where he specifically instructed that no title search be conducted to test the validity of the "rights" being purchased. Whether it be termed "exceeding authority" or "manifestly disregarding Texas law," it is clear beyond all question that the arbitrator approved a transaction that constituted an illegal bribe or kickback that violated Texas criminal law and common law.

Appellants' argument is that the arbitrator misinterpreted the evidence and misapplied the law. The parties presented conflicting evidence to the arbitrator, who determined the payment was not a fraudulent kickback. Appellants argue that the arbitrator came to the wrong conclusion on the facts and the law, but they do not explain how the record shows the arbitrator knew the law, recognized that the law required a particular result, but simply disregarded the law. *See Xtria L.L.C.*, 286 S.W.3d at 594; *Pheng Invs.*, 196 S.W.3d at 332.

The record shows that the arbitrator, after hearing all the evidence, determining the credibility of the witnesses, and weighing the conflicting evidence, found that Perlman's $500,000 payment to Comu was a finder's fee and not a fraudulent kickback. Nothing in the

record shows the arbitrator's decision was arbitrary or capricious. We conclude appellants have failed to show the arbitration award was the result of manifest disregard of the law or gross mistake. We overrule appellants' third issue.

## Public Policy

In their fourth issue, appellants contend the arbitrator's award was made in violation of a clearly defined public policy against kickbacks and bribes. "[A]n arbitration award cannot be set aside on public policy grounds except in an extraordinary case in which the award clearly violates carefully articulated, fundamental policy." *CVN Group, Inc. v. Delgado*, 95 S.W.3d 234, 239 (Tex. 2002). Appellants assert that "[c]ommercial bribery and kickbacks are violative of Texas public policy." However, the arbitrator did not find that any kickback or commercial bribery occurred. Instead, the arbitrator determined that appellees did not defraud HDC by paying Comu a finder's fee. Because the arbitrator found there was no fraudulent kickback or bribe, the finder's fee paid to Comu did not violate Texas public policy. We overrule appellants' fourth issue.

## CONFIRMATION OF THE AWARD

In their fifth issue, appellants contend the trial court erred by confirming the arbitration award because (1) the trial court believed the FAA applied and therefore the trial court applied the wrong standard to determining whether the arbitration award should be vacated; and (2) appellees did not present any affirmative evidentiary support for the award.

The trial court's initial order on the applications for confirmation or vacation of the arbitration award applied only the FAA. Subsequently, the trial court sent the parties a letter stating the TAA applied but that the outcome of the case remained the same. However, even if the trial court did apply only the FAA to the determination of whether the arbitration award should be vacated or confirmed, the trial court's determination is reviewed de novo on appeal.

–15–

*Cambridge Legacy Group*, 407 S.W.3d at 447. As discussed above, even applying the common-law grounds of manifest disregard of the law, gross error, and public policy under Texas law for vacating an arbitration award, appellants failed to show the arbitration award should be vacated. Accordingly, any error by the trial court's applying the FAA and not the TAA did not "probably cause[] the rendition of an improper judgment" and is not reversible. *See* TEX. R. APP. P. 44.1(a)(1).

Although appellants state in this issue that the trial court erred by confirming the arbitration award because appellees did not present any affirmative evidentiary support for the confirmation of the award, appellants do not present in their brief any argument or citation to authorities in support of this statement.[6] Failure to cite applicable authority or provide substantive analysis waives an issue on appeal. *Huey v. Huey*, 200 S.W.3d 851, 854 (Tex. App.—Dallas 2006, no pet.); *see* TEX. R. APP. P. 38.1(i) ("The brief must contain a clear and concise argument for the contentions made, with appropriate citations to authorities and to the record."). Accordingly, appellants have waived this issue.

We overrule appellants' fifth issue.

## DISQUALIFICATION OF TRIAL COURT

In their sixth issue, appellants contend the trial judge should have been recused or disqualified.

The grounds for disqualification of a judge are: (1) the judge served as a lawyer in the matter in controversy, or another lawyer with whom the judge practiced at that time served as a lawyer on the matter in controversy; (2) the judge knows that the judge has an interest in the subject matter in controversy; and (3) either party is related to the judge by affinity or

---

[6] Appellants instead argue in their brief that the trial court could review the award for manifest disregard of the law. We have already determined appellants failed to show there was manifest disregard of the law.

consanguinity within the third degree. TEX. CONST. art. V, § 11; TEX. R. CIV. P. 18b(a). Grounds for recusal include that the judge's impartiality might reasonably be questioned, the judge has a personal bias or prejudice concerning the subject matter or a party, or the judge or the judge's spouse has an interest that could be substantially affected by the outcome of the proceeding. *See* TEX. R. CIV. P. 18b(b)(1), (2), (6), (7)(B). "The test for recusal under rule [18b(b)] is 'whether a reasonable member of the public at large, knowing all the facts in the public domain concerning the judge's conduct, would have a reasonable doubt that the judge is actually impartial.'" *Hansen v. JP Morgan Chase Bank, NA*, 346 S.W.3d 769, 776 (Tex. App.—Dallas 2011, no pet.) (quoting *Sears v. Olivarez*, 28 S.W.3d 611, 615 (Tex. App.—Corpus Christi 2000, order) (en banc) (internal quotations and citations omitted)).

On May 5, 2010, almost three months after the trial court signed the order confirming the arbitration award, appellants filed "Plaintiff's Emergency Motion to Disqualify Judge and Vacate Order Confirming Arbitration Award."[7] Appellants alleged the trial judge should be disqualified because her background before taking the bench had involved arbitration practice, including incorporating and acting as an officer of a corporation in the business of alternate dispute resolution. Appellants also alleged the trial judge's husband was a lawyer whose practice involved serving as an arbitrator and representing parties before arbitration panels, and that both the trial judge and her husband had authored a paper praising arbitration and criticizing in-court litigation. Appellants asserted that (1) the paper praising arbitration created an appearance of bias and impropriety, and (2) the judge's professional background and her husband's law practice created an appearance of indirect financial bias. Senior Judge John L. McCraw, Jr. was

---

[7] Appellees assert that the motion to disqualify was not timely because it was filed "after the tenth day before the date set for trial or other hearing." TEX. R. CIV. P. 18a(b)(1)(B). However, because we conclude that Judge McCraw did not abuse his discretion by denying the motion to disqualify, we do not reach the timeliness issue.

appointed to hear the motion to disqualify. Judge McCraw heard evidence and argument on the motion to disqualify and denied the motion to disqualify.

## Standard of Review

We review an order denying a motion to recuse for an abuse of discretion. *Hansen v. JP Morgan Chase Bank, NA*, 346 S.W.3d 769, 776 (Tex. App.—Dallas 2011, no pet.). "A trial court abuses its discretion if it acts in an arbitrary or unreasonable manner without reference to any guiding rules or principles." *Walker v. Gutierrez*, 111 S.W.3d 56, 62 (Tex. 2003). Judge McCraw did not make findings of fact and conclusions of law in support of his ruling. Accordingly, we imply all findings necessary to support the ruling. *See In re Williams*, 328 S.W.3d 103, 112 (Tex. App.—Corpus Christi 2010, orig. proceeding [mand. denied]). The trial court's decision must be affirmed if it can be upheld on any legal theory that finds support in the evidence. *Worford v. Stamper*, 801 S.W.2d 108, 109 (Tex. 1990) (per curiam); *In re Williams*, 328 S.W.3d at 112 (citing *Worford*).

## Employment Law Seminar Paper

At the hearing on the motion to disqualify, appellants asserted that statements in a paper authored by the trial judge and her husband that they presented at an employment law seminar in 2001 demonstrated the trial judge's bias in favor of arbitration. The paper was written before the trial judge took the bench and nine years before the rulings in this case.

Appellants pointed Judge McCraw to the statement in the paper, "Arbitrators always listen to the case. . . . Arbitrators will hear all claims and give everyone a full and fair opportunity to present their case." Appellants also stated that the judge "has written complaining of 'perverse' appellate decisions that are 'anti-arbitration,' complaining of 'serious and numerous defects of the court system.'" The paper does contain those quotations, but appellants have taken them out of context.

In the motion to disqualify, appellants asserted the trial judge stated in the paper that "'anti-arbitration' decisions of a United States Court of Appeals are 'perverse.'" The quotation comes from the introduction of the paper, where the judge and her husband wrote:

> Arbitration is now the preferred dispute resolution method of choice for sophisticated employers and employees throughout the United States. The "debate" over the mandatory use of arbitration in non-union employment disputes is now over. The March 2001 United States Supreme Court decision in Adams v. Circuit City, infra, reversing yet another of the *perverse anti-arbitration decisions* of the Ninth Circuit Court of Appeal[s] has effectively ended realistic challenges to the arbitration of employment disputes. Almost every Supreme Court and Court of Appeal[s] decision since the Gilmer decision of a decade ago has upheld and enforced properly drafted arbitration provisions requiring the exclusive use of final and binding arbitration for the resolution of all statutory, common law and constitutional claims between employers and employees. Despite the ineffectually shrill protests of the E.E.O.C., the United States Supreme Court and all of the federal courts of appeal except the Ninth Circuit have consistently maintained and enforced the propositions articulated in the Gilmer decision when an employee has knowingly agreed to the arbitration of all disputes with their present or past employers. The Circuit City decision now mandates compliance with the law and jurisprudence even in the Ninth Circuit.

(Emphasis added.) The article did not state, as appellants' argument in the motion to disqualify and in their brief on appeal imply, that the Ninth Circuit's "perverse anti-arbitration decisions" were "perverse" because they held arbitration did not apply in those cases. Instead, the article stated that the Ninth Circuit's line of opinions were "perverse" because they were contrary to the decisions of the other circuits and the Supreme Court.[8]

After the introductory section, the paper described "The Deficiencies of Litigation" and then "The Advantages of Arbitration." On the deficiencies of litigation, the paper stated,

> Today, everyone knows the serious and numerous defects of the court system. They can be heard in the halls of Congress, the chambers of our courts, in "exposes" in the news media and even in our own offices when consulting with our clients. A few of the most notorious and best known problems of our legal system are:

---

[8] In *Adams*, the Ninth Circuit held that all employment contracts were outside the reach of the Federal Arbitration Act and reversed the trial court's order compelling arbitration. *Circuit City Stores, Inc. v. Adams*, 532 U.S. 105, 110 (2001). The Supreme Court reversed the Ninth Circuit, holding that employment contracts were subject to the FAA except for employment contracts of transportation workers. *Id.* at 119.

1. Delay. Court proceedings are slow, cumbersome and often provide no one with an acceptable outcome. Employment disputes frequently require many years of litigation and appeals to obtain a truly final decision.

2. Expense. Litigation is very expensive. Often, both sides in employment litigation spend tens of thousands of dollars in attorneys' fees, expert witness fees, investigators' charges and court costs. . . .

3. Loss of Privacy. Litigation is public and everyone can watch and learn about your client's problem. . . .

4. No Day in Court. Employment litigation is frequently decided by courts on technical reasons in a Motion for Summary Judgment. Neither the employee nor the employer ever has a real opportunity to tell their story or to fully present their case. . . .

5. Non-specialized Decision-Makers. Courts and juries do not specialize in resolving employment disputes. Yet, for more than 30 years, the United States Supreme Court has encouraged employers and employees to take advantage of arbitrators' expertise in resolving employment disputes.

The paper then compared these shortcomings of traditional litigation to what the authors perceived as the advantages of arbitration:

Arbitration offers numerous advantages to both employees and employers. It has many of the same benefits as mediation, but with the difference that the arbitration tribunal will decide the dispute once and for all. The best-known advantages of arbitration are those of:

Speed. Litigation in court, especially federal court, is frequently slow with the proceedings, often lasting from 2 to 5 years. If there is an appeal, that time period can become 5 to 10 years or even longer. An arbitration is usually completed in a period of months. . . . It is very difficult, indeed almost impossible, to appeal the decision of an arbitration tribunal. The law does permit a very limited opportunity to modify or change an arbitral award. However, that process is extraordinarily difficult and usually impossible.

Reduced Cost. Everyone will save money in legal expenses and costs by using arbitration in place of litigation. A study by the Institute for Civil Justice found that arbitration was approximately 20.4% cheaper than litigation. Most arbitrations take considerably less time to complete than a trial to either a court or to a jury. This is because most arbitrators are experts in their field and are able to learn and understand a party's case much faster than a non-specialist judge or jury.

Expert decision makers. Many arbitrators specialize in resolving employment disputes and now also increasingly, personal injury disputes. Courts do not. Parties can choose arbitrators who know and understand the law

–20–

applicable to the cases before them. They are a sophisticated expert tribunal and make their decisions accordingly. They are far less likely than a jury to decide a case based on bias, prejudice or antipathy toward a particular party or statute.

A Full and Fair Hearing. *Arbitrators always listen to the case.* They will generally not dismiss any claim on technical grounds without giving the parties a hearing. The parties [in] arbitration will almost always have an opportunity to present their evidence and position. An arbitration tribunal will rarely prevent your client from telling their story by granting a Motion for Summary Judgment, as is often done in the federal courts. . . . *Arbitrators will afford your client a fair hearing.* Your client may not win, but will have a fair chance to present their case.

Privacy. Arbitrations are conducted with only the parties and counsel present. . . . Thus the parties can resolve their differences without interference from the media or others without a legitimate interest in the parties' dispute.

Complete relief. . . . The arbitrators will hear all claims and give everyone a full and fair opportunity to present their case. They will then render an award which will be binding on all of the parties but without the delays, expenses or risks of an appeal.

(Emphasis added.)

Appellants assert that the trial judge's statements about litigation and arbitration before she took the bench "are especially troubling to a party seeking to overturn an arbitrator's decision." We disagree. Many of the criticisms of litigation and praises of arbitration discussed in the article have long been recognized in Texas judicial opinions. *See, e.g., In re Bruce Terminx Co.*, 988 S.W.2d 702, 704 (Tex. 1998) ("There is no adequate remedy by appeal for denial of the right to arbitrate, because the very purpose of arbitration is to avoid the time and expense of a trial and appeal."); *Jack B. Anglin Co. v. Tipps*, 842 S.W.2d 266, 272–73 (Tex. 1992) ("Absent mandamus relief, Anglin would be deprived of the benefits of the arbitration clause it contracted for, and the purpose of providing a rapid, inexpensive alternative to traditional litigation would be defeated."); *Temple v. Riverland Co.*, 228 S.W. 605, 609 (Tex. Civ. App.—Amarillo 1921, no writ) ("Arbitration is an arrangement for taking and abiding by the judgment of selected persons in some disputed matter, instead of carrying it to the established

–21–

tribunals of justice; and is intended to avoid the formalities, the delay, the expense, and vexation of ordinary litigation.") (quoting *In re Curtis*, 30 A. 769, 770 (Conn. 1894)).

Appellants argue that the statements, "Arbitrators always listen to the case. . . . The arbitrators will hear all claims and give everyone a full and fair opportunity to present their case," should be "especially troubling to a party seeking to overturn an arbitrator's decision." In their motion to disqualify, appellants said these statements showed that "[t]he judge herein has, therefore, based upon her own written words, come into this case with the preconceived notion that the arbitrator in this case must have done no wrong." In context, however, the quoted statements from the article meant that a party is more likely to have the opportunity to personally describe his grievance to the decision maker in an arbitration proceeding than he is in traditional litigation, where motions for summary judgment and other procedures and rules often prevent a party from being able to tell his story to the court or jury. Nothing in the article, when read in context, would lead a reasonable person to believe that the trial judge had "the preconceived notion that the arbitrator in this case must have done no wrong."

We conclude that Judge McCraw could have found that a reasonable member of the public would not have had a reasonable doubt concerning the trial judge's impartiality based on her statements in the paper.

### The Trial Judge's Professional Background and Her Husband's Practice

Appellants presented evidence that the trial judge, before she took the bench, was an officer and director of certain business entities promoting arbitration and other forms of alternate dispute resolution. One document showed she remained a director of one of the businesses after she took the bench, but her husband testified she had no interest in any of the businesses and was not otherwise involved in them. The judge's husband testified that the charters of all but one of the entities had been forfeited. He also testified that, although much of his practice involved

arbitration, he had no interest in the outcome of this case. He also testified that the trial judge had no interest, marital or otherwise, in his income from his law practice.

Based on the evidence before him, Judge McCraw could have found that neither the trial judge nor her husband had a financial interest in the subject matter of the case or any interest that would be substantially affected by the outcome of the case. Judge McCraw could have found that a reasonable member of the public would not have had a reasonable doubt concerning the trial judge's impartiality based on her professional background and her husband's practice.

We conclude that Judge McCraw did not abuse his discretion by denying appellants' motion to disqualify the trial judge. We overrule appellants' sixth issue.

## SANCTION

In the seventh issue, Emil Lippe, Jr. contends the trial court erred by imposing a sanction of $10,000 against him. We review an order imposing a sanction for an abuse of discretion. *Low v. Henry*, 221 S.W.3d 609, 614 (Tex. 2007). We may reverse the trial court's ruling only if the trial court acted without reference to any guiding rules or principles making the ruling arbitrary or unreasonable. *Id.* An order imposing a sanction is appropriate if there is a direct nexus between the improper conduct and the sanction imposed. *Id.* In general, courts presume that pleadings are filed in good faith. *Id.* The party seeking sanctions has the burden of overcoming this presumption of good faith. *Id.*

Section 10.002 of the Texas Civil Practice & Remedies Code permits a party to "make a motion for sanctions, describing the specific conduct violating section 10.001." CIV PRAC. § 10.002(a) (West 2002). Alternatively, the trial court "on its own initiative, may enter an order describing the specific conduct that appears to violate Section 10.001 and direct the alleged violator to show cause why the conduct has not violated that section." *Id.* § 10.002(b). Section 10.004 permits a trial court to impose a sanction on a party that has violated section 10.001. *Id.*

§ 10.004 (West 2002). Section 10.005 requires the trial court to describe in its order "the conduct the court has determined violated Section 10.001 and explain the basis for the sanction imposed." *Id.* § 10.005.

Section 10.001(2) requires that "each claim, defense or other legal contention in the pleading or motion is warranted by existing law or by a nonfrivolous argument for the extension, modification, or reversal of existing law or the establishment of new law." CIV. PRAC. § 10.001(2). Section 10.001(3) requires that "each allegation or other factual contention in the pleading or motion has evidentiary support or, for a specifically identified allegation or factual contention, is likely to have evidentiary support after a reasonable opportunity for further investigation or discovery." *Id.* § 10.001(3).

Appellees moved for sanctions on the grounds that HDC's original petition to vacate the arbitration award violated section 10.001(2) and (3). Appellees alleged that appellants presented no grounds for vacating the arbitration award because (1) HDC's grounds of gross mistake, manifest disregard of the law, and public policy were not permissible grounds for vacating an arbitration award under the FAA, and the FAA clearly applied in this case; (2) appellants' allegations that the arbitrator did not hear all of HDC's evidence was factually groundless; and (3) HDC's "pleading purporting to attack the Award because the Arbitrator failed to be convinced by HDC's witness and evidence, is groundless." The trial court agreed with appellees' first allegation and issued an order on February 8, 2010 stating the FAA applied and preempted any Texas law that would yield a different result than would be reached under federal law. Following the issuance of the supreme court's opinion in *Nafta Traders, Inc. v. Quinn*, 339 S.W.3d 84 (Tex. 2011), the trial court sent a letter to the parties stating it vacated its previous order and now ruled that the TAA applied to this case. The court subsequently issued the

sanctions order on appeal, which found that three paragraphs in HDC's original petition to vacate the arbitration award lacked evidentiary support .

## Trial Court's Order Imposing Sanctions for Violation of § 10.001(3)

The trial court's order states the trial court imposed the sanction because it found that three paragraphs in HDC's original petition signed by Lippe violated section 10.001(3), which requires that "each allegation or other factual contention in the pleading or motion has evidentiary support or, for a specifically identified allegation or factual contention, is likely to have evidentiary support after a reasonable opportunity for further investigation or discovery." CIV. PRAC. § 10.001(3). The court found that paragraphs 85, 91, and 92 did not meet this requirement because they "do not have and have never had evidentiary support." The court also found that Lippe "failed to make a reasonable inquiry into the facts supporting the factual allegations of paragraphs 85, 91 and 92 and that had he done so, he would have ascertained that the factual allegations of paragraphs 85, 91 and 92 did not have evidentiary support."[9]

Paragraphs 85, 91, and 92 of the July 23, 2009 petition to vacate the arbitration award alleged:

> 85. Plaintiff seeks a judgment vacating the Final Award, pursuant to § 171.088 of the Texas Civil Practice and Remedies Code, based upon § 171.088(a)(3)(A), because the arbitrator exceeded his powers in making his findings both of fact and law, and acted arbitrarily and in violation of Texas public policy in denying Plaintiff/Claimant relief.

> 91. Judgment should be entered vacating the Final Award because the Arbitrator acted arbitrarily, and exhibited manifest disregard of the law and public policy in making his decision and denying relief in the Final Award.

> 92. Judgment should be entered vacating the Final Award because the Arbitrator committed a gross mistake both of fact and law in rendering his Final Award, and

---

[9] Lippe also argues on appeal that the trial court's order imposing a sanction on the ground that the three paragraphs violated section 10.001(3) was an abuse of discretion because this ground was not alleged in appellees' motion for sanctions and the trial court's order did not require Lippe to show cause why the conduct did not violate section 10.001(3), as required by section 10.002(b). However, Lippe did not complain in the trial court that the order violated section 10.002(b). Accordingly, any error from the trial court's failure to comply with section 10.002(b) was not preserved for appellate review. *See* TEX. R. APP. P. 33.1(a)(1)(A).

acted arbitrarily in disregarding the undisputed evidence of the commercial bribery practiced by Defendants, and denying Plaintiff/Claimant any relief.

The "factual contention[s]" in these paragraphs are that the arbitrator disregarded evidence, made a decision, made "findings both of fact and law," and denied HDC relief. These contentions are supported by the record and are undisputed. The remaining allegations in the three paragraphs, that the arbitrator's actions were arbitrary and that he violated public policy, manifestly disregarded the law, and committed gross error, are legal contentions. The imposition of sanctions for unwarranted legal contentions is governed by section 10.001(2), not 10.001(3). The trial court's order states in two places that Lippe violated section 10.001(3), and it states in three places that the allegations in those paragraphs lacked evidentiary support. The order does not state that Lippe violated section 10.001(2) or that the claims were unwarranted by existing law or a nonfrivolous argument for extension, modification, or reversal of existing law. That the legal contentions may be unwarranted based on the alleged facts of the case is not a violation of section 10.001(3). *See Gomer v. Davis*, No. 01-11-00829-CV, 2013 WL 3027532, *9 (Tex. App.—Houston [1st Dist.] June 18, 2013, no pet.).[10]

---

[10] *Gomer v. Davis* concerned two people in litigation over possession of a poodle. *Gomer*, 2013 WL 3027532, at *1. The dog was originally owned by Artall, who was in poor health. Gomer, Artall's friend, alleged that Artall told Gomer she wanted Gomer to keep the dog when she, Artall, was in the hospital and to have the dog after Artall died. Artall gave Gomer an AKC transfer-of-ownership form for the dog, but Gomer did not send the form to the AKC until after Artall's death. Gomer first took possession of the dog on August 1, 2008. When Artall was in the hospital, Gomer kept the dog. When Artall was home, Gomer returned the dog to Artall. On November 1, 2010, Artall died with the dog in her possession. The next day, Artall's friend, Ann Steinlage, picked up the dog from Artall's apartment and took it to Artall's son, Davis, who kept the dog. Gomer demanded Davis turn the dog over to her, and Davis refused. *Id.* Gomer sued Davis for conversion, alleging Artall had gifted the dog to her. *Gomer*, 2013 WL 3027532, at *2. At trial, after Gomer presented evidence of these allegations, the trial court granted Davis's motion for directed verdict, which the court of appeals affirmed because Gomer presented no evidence of the elements necessary to establish a gift, immediate and unconditional divestiture of ownership in the donor and immediate and unconditional vesting of ownership in the donee. *Id.* at *4. The trial court imposed sanctions against Gomer under rule of civil procedure 13 and Texas Civil Practice & Remedies Code chapter 10. *Id.* at *2. The court of appeals set aside the award of sanctions. In discussing whether sanctions were appropriate under section 10.001(3), the court of appeals stated,

> In her original petition, Gomer alleged that she acquired the dog from Artall on August 1, 2008 . . . . She also alleged that Artall passed away before she could take possession of the dog, that Steinlage took possession of the dog upon Artall's death, and that Steinlage brought the dog to Davis. Gomer's factual allegations in her petition had evidentiary support. As we have stated, the fatal flaw in her conversion claim was that she could not establish that Artall's gift of the dog was absolute and irrevocable and thus was a valid inter vivos gift. Thus, under the facts of this case, her claim was not warranted by existing law. *See* TEX. CIV. PRAC. & REM. CODE ANN. § 10.001(2). However, the fact that she was ultimately unsuccessful in her claim does not control whether she should be sanctioned pursuant to section 10.001(3) for making factual allegations and contentions in her original pleading that did not have evidentiary support.

*Gomer*, at 2013 WL 3027532, at *9.

–26–

We conclude that the trial court's order imposing a sanction on Lippe for violating section 10.001(3) in paragraphs 85, 91, and 92 of HDC's original petition was an abuse of discretion.

### Appellees' Motion for Sanctions

Appellees presented three grounds in their motion for sanctions: (1) the FAA preempted appellants' state-law grounds for vacating the arbitration award because the transaction involved interstate commerce; (2) appellants' allegation that the arbitrator did not hear all of HDC's evidence was factually groundless; and (3) HDC's "pleading purporting to attack the Award because the Arbitrator failed to be convinced by HDC's witness and evidence, is groundless." Because the trial court did not expressly rule on the grounds in appellees' motion for sanctions, we decline to review the motion in this appeal, and we remand appellees' motion for sanctions to the trial court.

We sustain appellants' seventh issue.

### CONCLUSION

We affirm the trial court's judgment confirming the arbitration award, but we reverse the trial court's order imposing a $10,000 sanction on Emil Lippe, Jr., and we remand the cause to the trial court for further proceedings on appellees' motion for sanctions.

120857F.P05

/Lana Myers/

LANA MYERS
JUSTICE



# Court of Appeals
# Fifth District of Texas at Dallas

## JUDGMENT

HUMITECH DEVELOPMENT
CORPORATION, AND EMIL LIPPE, JR.,
Appellants

No. 05-12-00857-CV        V.

Alan Perlman, Michael Perlman, Ann
Perlman, David Perlman, Michelle Perlman
Berke, Beth Perlman Dreifach, Harry Sher,
and Betty Sher, Appellees

On Appeal from the 191st Judicial District
Court, Dallas County, Texas
Trial Court Cause No. 09-9266-J.
Opinion delivered by Justice Myers.
Justices O'Neill and Brown participating.

In accordance with this Court's opinion of this date, the judgment of the trial court confirming the arbitration award is **AFFIRMED**, but the trial court's order on motion for sanctions imposing a $10,000 sanction on appellant Emil Lippe, Jr. is **REVERSED** and the cause is **REMANDED** for further proceedings on appellees' motion for sanctions.

It is **ORDERED** that appellees Alan Perlman, Michael Perlman, Ann Perlman, David Perlman, Michelle Perlman Berke, Beth Perlman Dreifach, Harry Sher, and Betty Sher recover their costs of this appeal from appellant Humitech Development Corporation.  It is further **ORDERED** that appellant Emil Lippe, Jr. recover his costs of this appeal from appellees Alan Perlman, Michael Perlman, Ann Perlman, David Perlman, Michelle Perlman Berke, Beth Perlman Dreifach, Harry Sher, and Betty Sher.

Judgment entered this 27th day of February, 2014.

/ Lana Myers/
LANA MYERS
JUSTICE